WILLSON et al. v. WINCHESTER & P. R. CO. et al.

(Circuit Court of Appeals, Fourth Circuit. February 6, 1900.)

No. 306.

1. COURTS—REMOVAL OF CAUSE—DIVERSE CITIZENSHIP.

An action between a citizen of West Virginia and a railroad company, a citizen of Maryland, brought in West Virginia, is removable to the United States courts, although the liability of the railroad company is as lessee of another company, which was a citizen of West Virginia.

2. SPECIFIC PERFORMANCE—CONTRACT TO MAINTAIN RAILROAD STATION.

Where a railroad company, in consideration of a conveyance by plaintiff of a right of way through his land, agreed to establish and maintain a station on his land, plaintiff to operate the station and receive fees therefor, and did maintain such station for a period of years, after which it refused to do so longer, plaintiff's remedy is by an action at law, and a bill for specific performance will not lie.

3. SAME—ACCOUNT.

When a railroad agreed to maintain a station at a certain point, of which plaintiff was to be the agent, and it afterwards discontinued such station, and established another at a different point, plaintiff is not entitled to an accounting as to fees received at the latter, since the amount received at one station would not prove how much would have been received at another.

## Appeal from the Circuit Court of the United States for the District of West Virginia.

This is an appeal from a decree of the circuit court of the United States for the district of West Virginia, entered on the 17th of October, 1898 (82 Fed. 15), overruling the motion of the complainants to remand the cause to the circuit court of Jefferson county, in said state, from which it had been removed into the federal court, and sustaining a demurrer to complainants' bill, and dismissing the same. The object of the suit is to have specific performance of a deed filed as Exhibit A with the bill, entered into on the 13th of February, 1850, between the Winchester & Potomac Railroad Company of the one part, and John A. Thomson of the other, to the following effect:

"This indenture, made and dated the 13th day of February, in the year eighteen hundred and fifty, between the Winchester & Potomac Railroad Company of the one part, and Jno. A. Thomson of the other, witnesses, an agreement between said parties, as follows, to wit: Whereas, the road or track of said company is so located as to pass through the lands of the said Thomson, in the county of Jefferson; and whereas, in consideration that said Thomson relinquished to said company the right of way through his said lands, and waived all claim to damages, the said company, on its part, agreed to fix and establish, at a suitable place on said land, a depot or stopping place for putting down and taking up passengers, freight, etc.; it being further agreed that the necessary buildings, platform, and other fixtures and arrangements for that purpose should be erected and kept up by said Thomson at his own expense, subject to proper stipulations and conditions as to the charges for receiving and forwarding storage, etc., and that said company should construct the side track and switches necessary for said depot; and whereas, said agreement has accordingly been in operation for many years, but has never heretofore been reduced to form or put in writing: Now, the design of this instrument is to certify and preserve the proof of such agreement, the terms of which are more plainly stated as follows, to wit: The said John A. Thomson hereby releases all claim to damages for the passage of said road through his said lands, and guaranties and secures to said company the said right of way (as long as said company or said road shall exist). (2) In consideration thereof the said company will continue to observe and use the depot and stopping place now established at Summit Point, and commonly called 'Thomson's Depot,' as one of the company depots or stopping places. (3) That the company will not (un-

less compelled by law) establish any other depot or stopping place nearer to said Thomson than Cameron's on the north, and Wade's on the south. (4) That said company shall maintain or keep up at its own expense a proper side track and suitable switches as now established at said depot, or as the same may be modified by consent of said Thomson. But (5) said Thomson, on his part, at all times maintain and keep in good condition, at his own charge, all necessary and convenient buildings, platforms, fixtures, etc., for the reception, proper storage, accommodation, and delivery of passengers, produce, freight, etc., at said depot, and that he shall keep a trustworthy and competent agent at the same; it being further agreed and understood that said Thomson, or his agent or assigns, shall be entitled to the commissions and depot charges made at said establishment, but that the said charges, commissions, etc., at said depot shall not at any time be increased beyond the rates now allowed and charged at said depot, except with the permission of said company. It is further agreed that the fence near said depot, which separates the railroad track from the county road, shall be maintained by said Thomson, but the said company shall pay the reasonable charges for keeping it up. In testimony of which the said John A. Thomson has heretofore set his hand and seal, and William L. Clark, president of said company, by direction of the directors of the same, both hereto affixed his hand and the seal of said company.

"John A. Thomson. [L. S.]
"Wm. L. Clark, President. [L. S.]"

The appellants claim under the said Thomson by successive alienations of his right in the property involved and his interest under said contract, alleging, among other things, that the said railroad, extending from Harper's Ferry to Winchester, was built under a charter granted by the state of Virginia about the years 1831-32; that the same passed through the lands of the said Thomson for about a mile; that, pursuant to a verbal agreement entered into at the time of the construction of the road, the provisions of said deed of 1850 were carried out between said Thomson and said railroad; that the said Winchester & Potomac Railroad Company continued to operate said road until the year 1867, and carried out said contract and deed; that in said year it leased its said road and franchises to the Baltimore & Ohio Railroad Company for a period of 20 years from July 1, 1867; that the lessee continued to operate said road, and carry out the contract and deed with the said Thomson and those claiming under him, until the month of March, 1875, when they arbitrarily refused longer to carry out the same and use the depot mentioned in the contract, built by the said Thomson at Summit Point, and instead thereof, and in violation of the said agreement, established a depot or stopping place a quarter of a mile east, or north of said Thomson's depot at Summit Point, where for several years it received and discharged passengers and freight carried by its trains, and that a few years after thus violating its undertaking established another stopping place or depot a few hundred yards west of said Thompson's depot, which is now the regular depot at Summit Point, and the only depot there used by said road for its business; that both of the depots thus established were within the limits of "Wade's upon the south and Cameron's on the north," specifically mentioned in the contract aforesaid. Appellants allege that by this breach of contract they are greatly damaged; that the charges and commissions authorized and provided for by the terms of their agreement with the said company amounted in gross, at the time of the breach thereof, to between $1,500 and $1,800 per annum, and that they had been damaged to the extent of $10,000; that said appellees, notwithstanding their abandonment of the contract aforesaid in reference to their depot at Summit, continued to use the right of way over the lands belonging to said appellants. They further allege that after the abandonment of the contract aforesaid, some time prior to the year 1881 (the exact date not appearing), the appellants instituted their suit at law against the Baltimore & Ohio Railroad Company in the circuit court of Jefferson county to recover damages, laid at $10,000, by reason of the breach of the contract aforesaid; that application was made by the appellee to remove the case to the circuit court of the United States for the district of West Virginia, which motion the state court overruled; that the same was subsequently docketed in the United States circuit court for the district of West Virginia; that demurrers were filed to the declaration in each court,

and before the same were disposed of the papers in the state court were lost, and that said suit is still pending in both the state and federal courts. The said bill thereupon charges that complete and adequate remedy cannot be afforded in a court of law, and that in the common-law action aforesaid only a recovery can be had as of the time of its institution, which necessitates other suits, and concludes with a prayer for the specific performance of the covenants of the deed aforesaid, or a decree for such equitable compensation for the breach thereof as will secure to them the losses sustained, and for general relief, and makes the said Winchester & Potomac Railroad Company and the Baltimore & Ohio Railroad Company parties defendant.

A. W. McDonald (Benjamin Trapnell, on the brief), for appellants.
John Bassel, for appellees.

Before GOFF, Circuit Judge, and PURNELL and WADDILL, District Judges.

WADDILL, District Judge, after stating the facts as above, delivered the opinion of the court.

The assignments of error are that the court erred in refusing to remand the cause to the state court, because the application for removal was not made in time; and also because the Winchester & Potomac Railroad Company, against which relief was asked, was a corporation of West Virginia, in which state appellants resided, and removal ought not, therefore, to have been made; and, third, because the court sustained the demurrer to the bill and dismissed the same.

The removal from the state to the federal court seems to have been seasonably and properly made, and it is unnecessary, with the view we take of the case, to determine whether the Winchester & Potomac Railroad Company, a corporation chartered by the legislature of Virginia, has been made a West Virginia corporation by the laws of the latter state, or merely licensed to do business therein. The Baltimore & Ohio Railroad Company, as lessee of the Winchester & Potomac Railroad Company, is the defendant against whom relief is substantially asked, and that corporation has frequently been held to be a citizen of the state of Maryland, and not of the state of West Virginia. Hence the case was one properly removable into the federal court. Railroad Co. v. Harris, 12 Wall. 65, 20 L. Ed. 354; Martin v. Railroad Co., 151 U. S. 684, 14 Sup. Ct. 533, 38 L. Ed. 311, and cases there cited.

Upon the merits of the case, it will be observed that the decree of the lower court dismisses the appellants' bill without prejudice to them to enforce any demand they might have against the appellees by action at law.

The questions involved in considering the demurrer to the appellants' bill in this cause, and in determining the rights of the appellants under the contract or deed aforesaid, set out in their bill, have recently been under review both by the supreme court of the United States and by the circuit court of appeals for the Fifth circuit. Railway Co. v. Marshall, 136 U. S. 393, 10 Sup. Ct. 846, 34 L. Ed. 385; Same v. Scott, 41 U. S. App. 624, 23 C. C. A. 424, 77 Fed. 726, subsequently reported, on second appeal, in 36 C. C. A. 282, 94 Fed. 341. The principles enunciated in these two cases are

in effect that, under a contract like the one under consideration, the obligation to build and maintain the depot is discharged by its being once built and used and operated for the purposes for which it was intended, and that there is no continuing liability to keep and maintain the same, or any right of recovery for failure to do so. We do not feel called upon, however, to decide in this case whether the appellants will be denied all remedy under their contract or not, as it seems quite clear that the relief asked cannot be afforded in a court of equity, and that their remedy, if any they have, is in a court of law. This specific question was determined in the case of Railway Co. v. Marshall, supra. In that case, under a contract more favorable to appellants' view than the one sued on here, for there the word "permanent" was used in connection with the establishment of the terminus and shops of the railroad company at the city of Marshall, Tex., Mr. Justice Miller, in speaking for the court, held that it could not be supposed that the parties intended to covenant to build and rebuild, and never to change, any of its offices or the place of manufacturing cars or other machinery for the use of the company, nor that it would forever keep up for the town of Marshall this establishment when once organized; and, in discussing the question of the right to proceed in equity, the learned justice said: "But we are further of opinion that, if the contract is to be construed as appellant insists it should be construed, it is not one to be enforced in equity." Page 405, 136 U. S., page 849, 10 Sup. Ct., and page 390, 34 L. Ed. And, after a review of the authorities at page 407, further stated: "Without more minute examination of the authorities on this subject, we are of opinion that the plaintiff is not entitled to any relief in a court of equity." The circuit court of appeals for the Fifth circuit, in Railway Co. v. Scott, supra, following Same v. Marshall, supra, reached the same conclusion, and held that the defendant company was not liable in damages for removal of its depot to some other place. The facts in this latter case are substantially the same as in this case.

The fact that under the contract sued on the appellants claim the right to receive certain commissions and depot charges, and that in their bill they ask for an account, showing the revenues from the depot, does not materially affect this case, as it is admitted that no depot has been maintained under their contract at the place therein provided for, during the period covered by this suit, and it does not follow that an accounting of the revenues at another depot, at some other place maintained by the company, would throw any material light upon the damages claimed for breach of this contract, and which damages can be more readily determined in a court of law by a jury than in this forum.

It may be further remarked that no sufficient reason is given for the great lapse of time that took place between the breach of this contract and the institution of this suit. From March, 1875, until the institution of this suit, on the 27th of October, 1893, covers a period of nearly 19 years; and if it be contended that the time covered by the common-law suit, which is still pending, should not

be computed in this estimate, then some 13 years have elapsed during which time this suit could have been instituted. Under the familiar principle of equity, this suit for the specific performance of the contract sued on cannot be maintained, and the decree of the lower court dismissing the appellants' bill, without prejudice to maintain any appropriate action at law of which they may be advised, is hereby affirmed.

PURNELL, District Judge (concurring). I concur in the reasoning and conclusions of Judge WADDILL. The judge below in refusing to remand seems to have had in mind the decision of the supreme court, filed subsequent to his decision, in Louisville, N. A. & C. R. Co. v. Louisville Trust Co., 174 U. S. 552 et seq., 19 Sup. Ct. 817 et seq., 43 L. Ed. 1081 et seq., and the cases there cited with approval. For the purposes of jurisdiction a corporation is a citizen of one state only, and state legislatures cannot pass acts to affect the jurisdiction of the federal courts, whether so intended or not. The conclusion, therefore, would be sound, even if the Winchester & Potomac Railroad Company were not a mere nominal party defendant.