UNION STOCKYARDS CO. et al. v. NASHVILLE PACKING CO.

(Circuit Court of Appeals, Sixth Circuit. November 24, 1905.)

No. 1,381.

1. DEEDS—CONSTRUCTION—COVENANT OR CONDITION SUBSEQUENT.

It is the rule that a court does not favor a construction of a deed which will impose a condition subsequent leading to a possible forfeiture of the estate, but will be inclined to adopt, if it fairly can, a construction which will save the estate and remit the party in whose favor the obligation is created to an action for his damages; and the fact that the deed uses the language that the estate is granted on condition is not conclusive, and will not be controlling if upon other considerations it appears that such was not the intention of the parties.

[Ed. Note.—For cases in point, see vol. 16, Cent. Dig. Deeds, § 488.]

2. SAME.

Plaintiff, a stockyards company, conveyed certain land to defendant's grantor pursuant to a contract, by which he agreed to build and maintain thereon a packing house of a specified capacity, and that the buying, weighing, and handling of all stock purchased in the vicinity should be done at plaintiff's yards. The contract recited that the conveyance was to be made in consideration of such agreement, which was a "covenant which shall attach to and run with the land." No time was fixed during which such agreement should endure. The deed recited that it was made "upon condition of the due performance" of the contract by the grantee. The packing house was built, but its operation was subsequently abandoned. Held, that such provision was not a condition subsequent, upon the breach of which a court of equity would set aside the deed, but was a covenant, and the remedy for its breach an action for damages.

3. REMOVAL OF CAUSES—PROCEDURE AFTER REMOVAL—EQUITY JURISDICTION.

Where a cause is removed to a federal court from a state court which was competent to grant either legal or equitable relief, the plaintiff may proceed in the federal court either at law or in equity; but if he elects to proceed in equity, and no case for equitable relief is made, such court cannot retain and try the cause as an action at law.

Appeal from the Circuit Court of the United States for the Middle District of Tennessee.

W. G. Hutcheson, for appellants.

J. J. Vertrees and J. C. Bradford, for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. This suit was commenced by the filing of a bill in the chancery court for Davidson county, Tenn. The complainants described themselves therein as "persons in business under the firm name and style of the Union Stockyards Company," of Nashville, Tenn. The object of the bill was to obtain a decree for damages for the alleged breach of covenants, and for the recovery of certain lands described therein, because of the nonperformance of conditions subsequent contained in the deed under which the defendant held title to said lands, and also to obtain an injunction restraining the defendant from dismantling a packing house standing thereon and removing the machinery and fixtures belonging to said packing house, and for general relief. In explanation of this bill it should be stated that a peculiar statute of Tennessee vests in its chancery courts a considerable part

of the powers and jurisdiction of a common-law court, and these are made broad enough to authorize those courts to take cognizance of an action for damages for breach of covenants of the kind stated in the bill, and of an action for the recovery of the possession of land. An injunction was granted pendente lite on the filing of the bill. The defendant, Nashville Packing Company, an Illinois corporation, removed the cause on the ground of the diversity of citizenship of the parties into the Circuit Court of the United States for the Middle District of Tennessee, where it was docketed as an equity cause, in which character it was there prosecuted. The complainant, upon the assumption that it was a joint-stock company, has conducted its cause in the name of the "Union Stockyards Company." The defendant answered the bill, a replication was filed, and proofs taken. Upon final hearing the Circuit Court dismissed the bill, upon the grounds that in so far as it sought relief in damages the complainant had an adequate remedy at law, and in so far as it sought for a recovery by reason of forfeiture of the estate of defendant in the lands on account of the breach of conditions subsequent in the deed above mentioned, and sought an injunction to prevent the dismantling of the building and removal of the fixtures, the stipulations in the deed upon which complainant relied were not conditions subsequent, but were covenants merely. The dismissal was without prejudice to any other appropriate remedy for relief which complainant might be advised to pursue.

A brief account of the matters which form the ground of the controversy is this: The stockyards company had yards at Nashville arranged and fitted up for the reception, weighing, and temporarily keeping live stock of different kinds collected for slaughtering or other disposition. Charges for this business yielded its revenue. Being desirous of increasing its business, it entered into negotiations with John Cudahy, of Chicago, during the summer of 1892, with the object of inducing him to build a packing house near to the stockyards and which should be operated in connection therewith. A tract of land known as the "Cunningham Tannery" property was chosen by the parties as a suitable location. Thereupon they entered into the following agreement:

"This contract entered into this 18th day of August, 1892, between the Union Stockyards Company, of Nashville, Tennessee, herein called first party, and John Cudahy, of Chicago, Illinois, herein called the second party, witnesseth: The first party covenants and binds itself, on demand after the execution of this contract, to convey by quitclaim deed, to John Cudahy, a good fee-simple title to the parcel of land in Davidson county, Tennessee, known as the Cunningham Tannery property, described as follows: [Here follows the description, which is of the tract mentioned.] The first party further agrees and binds itself to defend at its own expense any litigation that may be instituted to prevent (on the ground of nuisance) the erection of buildings which John Cudahy proposes to erect on said property for conducting his business. In consideration of the above, the second party agrees and binds himself to erect, equip, operate and maintain, in the most approved modern manner, or cause the same to be done, buildings and a plant of capacity sufficient to kill and handle three hundred hogs and fifty cattle per day the year round and to complete and commence to operate the plant within one year from the execution of this contract; any time during which the work may be prevented on account of litigation or labor strikes not to be counted; and, further the party of the second part agrees and binds himself

and assigns that all live stock business at Nashville and within ten miles thereof, that is buying, weighing and handling, for the business of John Cudahy and his assigns and for the establishment to be built and operated upon said Cunningham Tannery property aforesaid, shall be done at and in the yards of the first party, and that this obligation of the second party is the consideration for the conveying of said Cunningham Tannery property and is a covenant which shall attach to and run with the land.

       "Union Stockyards Company,
        "By O. F. Noel, Vice President.
        "By James E. Caldwell, Sec'y.

"Signed in duplicate."

A few days later, September 3, 1892, the stockyards company executed the proposed deed to Cudahy, which was of the tenor following:

"For and in consideration of the contract made on the 18th day of August, 1892, by and between John Cudahy, of Chicago, Illinois, and the Union Stockyards Company, of Nashville, Tennessee, and upon condition of the due performance thereof by the said John Cudahy and his assigns in the sum of $1.00 cash in hand paid, the receipt of which is hereby acknowledged, the Union Stockyards Company, of Nashville, Tennessee, hereby transfers and conveys to John Cudahy, of Chicago, Illinois, the following described land in Davidson county, Tennessee, as follows: [Here follows description.] To have and to hold the said land with the improvements, appurtenances thereto belonging to the said John Cudahy, his heirs and assigns. The Union Stockyards Company covenant with the said John Cudahy, that it is lawfully seised of said land, have a good right to convey it and that it binds and obligates itself to pay off all encumbrances of every nature outstanding against said property, and do further covenant and bind itself to warrant and forever defend the title to the said property free and unincumbered to the said John Cudahy, his heirs and assigns, against the lawful claims of all persons. Witness the signature of the company by its vice president and secretary this 3d day of September, 1892.

       "Union Stockyards Company,
        "By O. F. Noel, Vice President.
        "By James E. Caldwell, Sec'y."

The packing house was built as contemplated. This was done by the Nashville Packing Company, which assumed Cudahy's obligations in the contract of August 18, 1892. And on August 5, 1893, Cudahy executed to the Nashville Packing Company a deed as follows:

"Whereas on August 18, 1892, a contract was entered into by John Cudahy, of Chicago, Illinois, with the Union Stockyards Company, of Nashville, Tennessee, in which it was agreed that said Union Stockyards Company would transfer to said John Cudahy a certain piece of property in Nashville, Tennessee, known as the 'Cunningham Tannery,' valued at $35,000 and for the consideration and on condition that said Cudahy would build thereon a packing house and operate the same and transact his business of buying, weighing, feeding and handling live stock at Nashville, Tennessee, and vicinity, at and in the yards of said Union Stockyards Company. Whereas on September 3, 1892, and in compliance with their part of said contract, the said Union Stockyards Company did transfer to said John Cudahy, the said property for the said consideration of the due performance of the said contract; and, whereas, the said John Cudahy transferred his rights under the said contract to the Nashville Packing Company, a corporation, which has assumed his obligations under the said contract, and which does hereby assume to carry out the same and relieve the said John Cudahy of all liability thereunder, a copy of said contract being now in the possession of the manager of the said company, Mr. J. J. Delaney, and its contents duly known by him. Therefore, in consideration thereof, and, especially that the said Nashville Packing Company agreeing and binding itself to carry out said contract, and

for the further consideration of the moneys already expended by them and $1 cash in hand paid, the receipt of which is hereby acknowledged, I, the said John Cudahy, do hereby transfer and convey unto the said Nashville Packing Company all of my right, title, and interest in and to the said tract of land in Davidson county, Tennessee, as follows: [Here follows description.] To have and to hold the said tract or parcel of land within the appurtenances, estate, title and interest thereto belonging to the said Nashville Packing Company, their heirs and assigns and I do covenant with the said Nashville Packing Company that I am lawfully seized and possessed of said land have a good right to convey it, and I do further covenant and bind my representatives to warrant the same against all persons whomsoever claiming under me.

"Witness my hand this the 5th day of August, 1893.

"John Cudahy,
"Margaret Cudahy."

Thereupon business of the kind intended was inaugurated at the packing house and the stockyards and went on for several years with some interruptions. At length it dwindled. The packing company claims that this was because it could not obtain stock of the proper quality for its business, and claims, further, that the business proved unprofitable and could not be carried on without loss. Eventually, and after the lapse of seven years, it discontinued the packing business there, and was, at the time of filing the bill, about to remove the building and machinery and other fixtures from that locality.

The question upon which the cause presented must turn is whether, upon the right construction of the deed from the stockyards company to Cudahy, the estate conveyed should be held to be subject to the condition of the performance of his covenants by Cudahy or his assigns— that is to say, his covenants to build, to maintain, and to operate a packing house on the land conveyed—or whether the estate passed absolutely and the covenants were collateral merely, to be satisfied in case of breach by compensation for damages. The rule is that the court does not favor a construction which will impose a condition subsequent leading to a possible forfeiture of the estate, by which is meant, of course, not that the court will refuse to recognize such a condition, when it clearly appears that it was intended the estate should terminate upon its occurrence, but that it will be inclined to adopt, if it fairly can, a construction which will save the estate and remit the party in whose favor the obligation is created to an action for his damages. Sheppard's Touchstone, 133; 4 Kent, Com. *132; 2 Washb. on Real Prop. *447; Board of Commissioners v. Young, 59 Fed. 96, 8 C. C. A. 27; In re Pennewell, 119 Fed. 139, 55 C. C. A. 571.

The circumstance that the deed uses the language that the estate is granted upon condition is not conclusive, and will not be controlling if upon other considerations it appears that such was not the intention of the parties. Stanley v. Colt, 5 Wall. 119, 18 L. Ed. 502; Sohier v. Trinity Church, 109 Mass. 1; Greene v. O'Connor, 18 R. I. 56, 25 Atl. 692, 19 L. R. A. 262. The question is to be determined from the language employed, the situation of the parties, their relation to the subject of the transaction and the object in view. On behalf of the stockyards company it is pointed out that the language of the deed declares that the conveyance is "upon the condition of the due performance" by

Cudany, and his assigns, of the contract of August 18, 1892. And, further, it is urged that it cannot be supposed that the stockyards company would be content to deed to Cudahy a property costing $35,000 for the purpose of a business venture and then be bereft of it if the venture should fail of its object. On the other hand, it is to be noted that in the original contract the stockyards company covenants "to convey by quitclaim deed to John Cudahy a good fee-simple title to the parcel of land," and there is no suggestion that the conveyance should be upon a condition.

And one of the covenants of Cudahy in this contract "upon the due performance" of which it is said the deed of September 3d was conditioned, was that all his business of buying, weighing, and handling live stock at Nashville or within 10 miles thereof should be done at the stockyards of the first party, and that this covenant should attach to and run with the land. But, if the nonperformance of the covenant was expected to defeat the estate, it was incongruous that it should run with the land. It rather indicates that the estate would continue and the covenant run on, and not come to an end upon a partial breach of it. Again, Cudahy contracted to erect a building which would cost several times the value of the land, and it might be doubted that he would do this upon the understanding that if the venture proved unprofitable he would forfeit all that he had invested in it. Doubtless both parties had confidence that the undertaking would be successful, but every prudent business man would be likely to contemplate that it might not prove so. Another feature of the transaction which seems to us of much significance is that no time was fixed during which the obligation to maintain and operate the packing house should endure. It seems to be hardly reasonable to suppose that the parties could have understood that this covenant should continue to operate perpetually. Indeed, one can hardly withstand the conviction that the covenant was expected by the parties to have some limitation in respect of time, and, if so, it might be a question whether any other limitation is more natural or probable than that it should abide such contingencies of the business as could not in the natural course of things be avoided, as, for instance, could not, with prudent management, be carried on without loss. Of course, we are not now undertaking to lay down a particular definition of the contingencies which might terminate the obligation. It is enough for the present purpose of construing the covenant to say that it seems unreasonable to think that the parties intended it to be interminable in its operation. It is contended that the proof shows that the defendant has not acted in good faith, that it has made no proper effort to operate the packing house, that with a reasonable application of skill and energy it could have been operated profitably, that it has in bad faith transferred the business that properly belonged there to other localities; in short, has been conducting itself without any regard to its stipulations with complainant and as if it were contriving to make the business appear so profitless as to justify an abandonment of it. But while all this may be sufficient ground on which to allege a breach of covenant and for the recovery of damages, it has no bearing on the construction of the deed.

No one of the considerations we have suggested is conclusive in either direction. But it seems to us that the preponderance of all the reasons by which the question should be tested is against the contention of the appellant that the covenant to maintain and operate the packing house is a condition to the duration of the estate, and tends rather to establish that it is collateral to the grant, and is to be satisfied by compensation for damages in case of breach. A similar question with respect to the duration of the covenant, when there was no limitation in respect of time, has been presented in several reported cases, and the view which has been generally taken is that, when the time is not limited by the language employed, it should be implied that some limitation was intended and that it was such as the nature of the case would indicate as reasonable. Among other cases are Jones v. Newport News & M. V. Co., 65 Fed. 736, 13 C. C. A. 95, 31 U. S. App. 92, decided by this court; Mead v. Ballard, 7 Wall. 290, 19 L. Ed. 190; Texas & Pacific Ry. Co. v. Marshall, 136 U. S. 393, 10 Sup. Ct. 846, 34 L. Ed. 385; Willson v. Winchester & P. R. Co., 99 Fed. 642, 41 C. C. A. 215; Murdock v. Mayor, etc., of Memphis, 7 Cold. (Tenn.) 483. In this latter case the court expressed the opinion that the question was to be resolved upon the analogy of the general rule that, where no time is fixed, reasonable time is implied. With respect to the covenant to erect a packing house, the time within which it should be done is fixed; and other conditions would be presented if the question had arisen upon a breach of that covenant, for that is quite distinguishable from the covenant to maintain and operate. But the building was duly built and we have not the question suggested to decide. This conclusion leads to the result reached by the court below; that is to say, that the bill cannot be maintained. The granting of an injunction would only be a means of effectuating a decree upon the merits of the principal controversy, and the fitness of it falls with the main purpose.

There is left only the question of the right to recover damages. The state court was competent to grant either legal or equitable relief; but, when the cause was removed into the Circuit Court of the United States, it was necessary for the complainant to choose its course—whether to prosecute it as an action at law to recover damages, or to recover the land, or a suit in equity to obtain an injunction, and incidental to this a determination concerning the title. Fletcher v. Burt, 126 Fed. 619, 63 C. C. A. 201; Thompson v. Railroad Co., 6 Wall. 134, 18 L. Ed. 765; Hurt v. Hollingsworth, 100 U. S. 100, 25 L. Ed. 569. It elected to proceed with the cause as one of equitable cognizance. Having failed to establish its claim to relief upon the matters within the jurisdiction of the court, its bill was properly dismissed. The case could not properly be retained for the purpose of awarding damages for breach of covenant, or to determine the right of possession for the remedy in a court of law was entirely adequate for either of those purposes.

If the complainant could have maintained its bill for an injunction, the court, having power to grant that measure of equitable relief, could retain the cause for the purpose of settling the whole controversy by a final decree, and thereby avoid the necessity for another suit, as we held in Allegheny Oil Co. v. Snyder, 106 Fed. 764, 45 C. C. A. 604, and

Peck v. Ayers & Lord Tie Co., 116 Fed. 273, 53 C. C. A. 551, might be done. But here no ground whatever for equitable relief is established.

The decree should be affirmed, with costs.