IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 22, 2004 Session

## KARL P. BIRKHOLZ, ET UX. v. DAVIS N. HARDY, ET UX.

**A Direct Appeal from the Circuit Court for Shelby County**
**No. CT-005522-01     The Honorable John R. McCarroll,Jr., Judge**

---

**No. W2003-01539-COA-R3-CV - Filed August 11, 2004**

---

Appellants/buyers appeal from judgment entered for Appellees/sellers on promissory note given for purchase of real estate.  The note contained a condition precedent wherein the principal would not be due until Appellants/buyers sold commercial property they owned.  The trial court imposed five years as a reasonable time for performance of the contract and awarded prejudgment interest.  Appellants/buyers appeal.  We affirm in part, reverse in part, and remand.

**Tenn. R. App. P. 3;Appeal as of Right; Judgment of the Affirmed in Part, Reversed in Part and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

William Ernest Norcross of Cordova; Minton P. Mayer of Memphis For Appellants, The Estate of Davis N. Hardy and Clarise B. Hardy

Glen Reid, Jr. of Memphis For Appellees, Karl P. Birkholz and Molly B. Birkholz

**OPINION**

In November1998,  Karl P. Birkholz and Molly B. Birkholz (the "Birkholzes," "Plaintiffs," or "Appellees") owned residential property at 9375 Forest Wind Drive in Germantown, Tennessee (the "Forest Wind Property").  The Birkholzes had financed construction of a house at that location.  The Forest Wind Property was put on the market sometime in 1997, with a listing price of $543,000.00.

Davis N. Hardy and Clarise B. Hardy (the "Hardys," "Defendants," or "Appellants") owned a tract of land at 668 Goodman Road, Southaven, Desoto County, Mississippi (the "Goodman Road

Property").[1] This property was zoned commercial and had been on the market for sale for over one (1) year by the summer of 1998.

The Birkholzes and the Hardys entered into an agreement wherein the Hardys would purchase the Forest Wind Property for $520,000.00. The Hardys agreed to pay $1,000.00 down, with the remaining debt evidenced by a "promissory note" signed by the Hardys and the Birkholzes. The Note reads as follows:

> This Note of $519,000.00 (five Hundred Nineteen thousand and No/100 Dollars), now from this day 11/24/98 being owed to Karl P. & Milly B. Birkholz, from Davis N. And Clarise B. Hardy, in exchange for relese of property known as 9375 forest Wind Drive, Lot 31 - 8th addition, final plat, Forest Hill Irene Est. P. 148-153, URP1-355A - Lot 28, given by Karl P. And Molly b. Birkholz giving clear and free of debt, a warranty deed to Davis N. And Clarise B. Hardy to have and to hold with no attachment against property known as 9375 Forest Wind Drive, Collierville, Tennessee.

> During the life of this Note being held as apart [sic] of 668 Goodman Road, Southaven, MS full ownership being held by Davis N. and Clarise B. Hardy in full control of said property. They will keep marketing property along with other brokers for a sale and closing. At such time this Note will be paid in full with no other amount added to the $519,000.00 during the life of said Note.

> This Note will not be sold to another without the written consent of Davis N. and Clarise B. Hardy and may never be increased from the original price of $519,000.00. The closing attorney of 668 Goodman Road at that time will withhold Note and write a check to Karl P. and Molly B. Birkholz in the amount of $519,000.00.

> This Note of $519,000.00 will be filed along with the deed and legal description of the property known as 668 goodman Road, Southaven, Mississippi in the Hernando Court House till such property named above is sold and note cleared.

---

[1] Davis N. Hardy died on September 14, 2003. An estate was opened on November 16, 2003 in the Probate Court of Shelby County. Clarise B. Hardy was appointed the Executrix of the Last Will and Testament of Davis N. Hardy. On November 19, 2003, Mrs. Davis filed a "Notice of the Opening of the Estate of Davis Hardy," with the trial court. By Order of October 14, 2002, the Estate of Davis N. Hardy was substituted as an Appellant for Davis N. Hardy.

Legal Description: 668 goodman road, Southaven, MS. SE Quarter, Section 30 Township 1, Range 7, North Side of Goodman Road, Desoto County, Southaven, Mississippi.

On November 24, 1998, the Birkholzes transferred titled to the Forest Wind Property to the Hardys, and the Hardys signed and delivered the above-described note. Thereafter, the Hardys took possession of the Forest Wind Property. On or about December 24, 1998, the Hardys borrowed $340,000.00 from Bancorp South Bank and secured the loan with the Forest Wind Property.

The Goodman Road Property did not sell and the Hardys made no payment on the Forest Wind Property. On September 6, 2001, the Birkholzes filed a Complaint against the Hardys, claiming that the Hardys had failed to "pay the balance due on the Primissory Note," and had "failed or refused to perform [the] obligations imposed on them by the Promissory Note in good faith." The Hardys filed their "Answer and Countercomplaint" on December 4, 2001, which reads, in pertinent part, as follows:

> 9. Defendants deny that they have refused to pay the balance due on the Promissory Note and deny that they have failed and refused to perform the obligations imposed on them by the Promissory Note in good faith, and would show this Honorable Court that said Promissory Note is not due and owing and will not be due and owing until the Defendants have sold the property at 668 Goodman Road, Southaven, Mississippi as provided in said Promissory Note.
>
> *                              *                              *
>
> 11. The Defendants admit that they have had the use and benefit of the residential property since November, 1998 and would show to the Court that they had the absolute right to do so under the terms of the agreement entered into by the parties. The Defendants further admit that they have not made any payment to the Plaintiffs for the use of the residential property and the Defendants would show unto this Honorable Court that they are not required or obligated to make any payment to the Plaintiffs until the Defendants' property at 668 Goodman Road, Southaven, Mississippi is sold pursuant to the Promissory Note.

The Counterclaim portion was amended on March 6, 2003 and reads, in relevant part, as follows:

## COUNTERCOMPLAINT

COME NOW the Counter-Plaintiffs, Davis N. Hardy and Clarise B. Hardy and...would show unto this Honorable Court as follows:

\*                            \*                            \*

3. That on or about September 9, 1998, the Counter-Defendants entered into an agreement to sell the real property known as and located at 9375 Forest Wind Drive, Collierville, Tennessee to the Counter-Plaintiffs. That said agreement styled Offer to Purchase Real Estate and its two page attachment provided for the Counter-Defendants to complete construction of the home and to make certain improvements and construction work thereon as set out in the Offer to Purchase Real Estate and its two page attachment....

4. That in consideration for said agreement and the work to be performed by the Counter-Defendants, the Counter-Plaintiffs agreed to purchase the said residential property and executed a Promissory Note for the purchase of same on November 24, 1998....

5. That the said Counter-Defendants breached the said agreement...by refusing and failing to carry out and perform the work, labor and services....

6. That as a result of the Counter-Defendants' breach of said agreement, the Counter-Plaintiffs have been forced to employ other builders and contractors and will be forced to employ additional builders and other contractors to complete the work on said residential property thereby incurring expenses and damages due to the Counter-Defendants' breach....

WHEREFORE, PREMISES CONSIDERED, the Counter-Plaintiffs pray for a money judgment against the Counter-Defendants in the amount of $150,000.00 and costs of the cause.

On October 23, 2002, the Birkholzes filed a Motion for Summary Judgment, along with the Affidavit of Karl P. Birkholz in support thereof. On March 13, 2003, the Birkholzes filed a "Reply to Amended Counter Complaint."

A non-jury trial was held on April 29, 2003 and the trial court entered its Judgment on May 20, 2003. The Judgment reads, in relevant part, as follows:

1. Plaintiffs, Karl P. Birkholz and Molly B. Birkholz, are granted judgment against the Defendants, Davis N. Hardy and Clarise B. Hardy, in the principal amount of $513,361.00, effective November 24, 2003, representing the principal amount of the Promissory Note, less credit and offset for Defendants' counterclaims;[2]

2. Plaintiffs, Karl P. Birkholz and Molly B. Birkholz, are granted pre-judgment interest against Defendants, in the amount of $88,474.50, continuing at the daily rate of $55.89 until the judgment in the principal amount is paid, or November 24, 2003 when the judgment in the principal amount becomes effective.

3. An equitable lien and/or constructive trust is imposed upon the real property of Defendants, Davis N. Hardy and Clarise B. Hardy, on Goodman Road in DeSoto County, Mississippi, 668 Goodman Road, for the benefit of Plaintiffs, Karl P. Birkholz and Molly B. Birkholz, until the judgment for principal and pre-judgment interest set forth in paragraphs 1 and 2 above shall be paid in full, provided that, Plaintiffs shall not execute on the equitable lien and/or constructive trust until on or after November 24, 2003.

The trial court's findings from the bench were incorporated by reference into the Judgment and read, in pertinent part, as follows:

The real hard question is–for me [the trial court] what is a reasonable period of time that should be given to the Hardys to pay the note. I think–and my legal premise on which I'm going to base this decision is that when I'm faced with a contract like this that has an open ended situation, a condition precedent, I think I do have to imply some reasonable period of time in which it's going to be paid. It can't go on forever.

*                         *                         *

...Five years is a long time to be sitting in a house and not paying any kind of money to the folks that sold it to you. But the market, you know, may be up and down in real estate.... But I think five years is the outside limit that I could impose.

---

[2] Specifically, the trial court allowed an offset against the $519,000.00 principal amount for carpeting and landscaping and/or appliances ($5,500) plus $139.00 for a garbage disposal.

The Hardys appeal from the Judgment and raise eight (8) issues for review as stated in their brief:

1. Whether the Trial Court erred in failing to enforce the November 24, 1998 promissory note and contracts as written when the terms thereof were plain and unambiguous and provided that the $519,000 principal amount thereof was due and payable upon the sale of a commercial tract of land owned by the Hardys and located on Goodman Road, Southaven, Desoto County, Mississippi (the "Mississippi Property")?

2. Whether the Trial Court erred when it found that Clarise B. Hardy and the late Davis N. Hardy (the "Hardys") acted in good faith in their efforts to sell the Mississippi Property, but the Court, nevertheless, granted, by a judgment filed on May 20, 2003 with an effective date as of November 24, 2003, a judgment against the Hardys for $513,361.00 (the "$513,361 November 24, 2003 Judgment), which represented the principal amount of $519,000.00 owed pursuant to the terms of the November 24, 1998 Promissory Note less the offsets allowed by the Trial Court, although there was no requirement that the Mississippi Property be sold on or before November 24, 2003?

3. Whether the Trial Court erred in concluding that a five year period was a reasonable period in which the Hardys had to sell the Mississippi Property when there was no proof presented by Karl P. Birkholz and Molly B. Birkholz (the "Birkholzes") as to what was a reasonable time period in which to sell commercial property in Southaven, Desoto County, Mississippi?

4. Whether the Trial Court erred in awarding the Birkholzes prejudgment interest at the rate of six (6%) percent per annum on $340,000 from December 24, 1998 until November 24, 2003 ("Prejudgment Interest"), the effective date of the $513,361 November 24, 2003 Judgment, although the Court ruled that the Birkholzes were not entitled to a judgment and the Hardys owed no payments on the Promissory Note, pursuant to the Trial Court's rulings, until November 24, 2003, and the Hardys legally were entitled to all the benefits of fee simple ownership of the 9375 Forest Wind Drive, Collierville, Tennessee house and lot (the "Forest Wind Property"), including the right to live in and mortgage the Forest Wind Property, from November 24, 1998?

-6-

5.  Whether the Trial Court erred in awarding Prejudgment Interest when the November 24, 1998 Promissory Note bore no interest on the $519,000 principal due thereunder and specifically provided that the note would be payable upon the sale of the Mississippi Property "with no other amount added to the $519,000 during the life of the said note" and the Court found that the November 24, 1998 Promissory Note was not due until November 24, 2003.

6.  Whether the Court erred in awarding Prejudgment Interest on the grounds that the Hardys acted in bad faith when the Hardys placed, on December 24, 1998, the $340,000 mortgage on the Forest Wind Property (the "340,000 Mortgage") when the Birkholzes had not alleged in the Complaint that the Hardys acted in bad faith by placing the $340,000 Mortgage and the matter had not been brought before the Court by pleadings or other means and the Hardys afforded the opportunity to defend the issue at trial?

7.  Whether the Trial Court erred in awarding Prejudgment Interest because the Hardys place the $340,000 Mortgage on the Forest Wind Property when the Hardys were under no legal duty on December 24, 1998 to pay any portion of the $519,000 November 24, 1998 Promissory Note and when the Birkholzes did not allege that the Hardys breached, on December 24, 1998, any legal duties owed by the Hardys to the Birkholzes?

8.  Whether the Trial Court erred in failing to grant the Hardys a Judgment pursuant to the Hardys amended countercomplaint but instead offset against the $519,000 owed, pursuant to the terms of the November 24, 1998 Promissory Note, certain amounts the Trial Court found were owed the Hardys?

The issues are rephrased as follows:

1.  Whether the obligation of the Hardys to sell the Goodman Road Property was governed  by a reasonable time standard.

2.  Whether the trial court erred in finding, as a matter of fact, that five years is a reasonable time to accomplish the sale of the Goodman Road Property.

3.  Whether the trial court erred in awarding prejudgment interest.

4. Whether the trial court erred in its award to the Hardys on the counter-claim.

We will consider the first two issues together:

Tennessee recognizes an implied duty of good faith and fair dealing in the performance and enforcement of every contract, ***ACG, Inc. v. Southeast Elevator, Inc.***, 912 S.W.2d 163 (Tenn. Ct. App. 1995). A conditional contract is one where the obligation to perform is dependent upon the happening of some contingency or condition (often referred to as a condition precedent), which is expressly stated in the contract. ***Stovall v. Dattel***, 619 S.W.2d 125 (Tenn. Ct. App. 1981).

The Note at issue in this case undisputedly contains a condition precedent, to wit: the Hardys' obligation to pay the $519,000.00 is conditioned upon their selling the Goodman Road Property. What the Note lacks, however, is a time period in which the condition precedent must be performed. The general rule in Tennessee is that, "where no provision is made in the contract for performance, a reasonable time is implied." ***Minor v. Minor***, 863 S.W.2d 51, 55 (Tenn. Ct. App. 1993. However, the question of whether this general reasonable time standard applies to contracts, such as the one at issue here, which contain conditional restrictions is not absolutely clear in Tennessee. As addressed by Appellant, there are three lines of thought on this issue: (1) in cases where the performance contingency is wholly or partially within the control of the obligor, the obligor either must bring about the event or perform or pay within a reasonable time. ***See C.J. Hogan, Inc. v. Atlantic Corp.***, 332 Mass. 322, 124 N.E.2d 905 (1955); ***Louise B. Taylor's Guardian v. Taylor***, 117 Vt. 399, 93 A.2d 102 (1952); ***Duncan Box & Lumber Co. v. Sargeant***, 126 W. Va. 1, 27 S.E.2d 68 (W.Va. 1943); (2) when performance is conditional, and the contingency does not happen, payment must be made within a reasonable time. ***See Hamlin v. Steward***, 622 N.E.2d 535 (Ind.App. 1993); and (3) if the specified performance contingency is within the obligor or promisor's control, the obligor or promisor has an implied obligation to exercise reasonable diligence to bring about the contingency; in the absence of the exercise of reasonable diligence, the obligor or promisor will be required to perform the promise or obligation if the specified contingency has not occurred. ***See Reid v. Pyle***, 51 P.3d 1060 (Colo. App. 2002).

Appellants urge this Court to follow the latter line of reasoning and to find that, since the trial court found that the Hardys had exercised reasonable diligence in trying to sell the Goodman Road Property, the reasonable time standard should not be imposed. We decline.

Tennessee courts have long imposed the reasonable time standard in all types of contracts. For example, in ***Murdock v. Mayor and Aldermen of Memphis***, 47 Tenn. 483 (1870), our Supreme Court held that the conveyance of land to the City of Memphis for a naval yard imposed a condition for vesting which was satisfied when the property was accepted and the naval yard was established thereon. The opinion states: "No time being limited for the performance of this condition, it must be performed within a reasonable time. 1 Washb. Real

Prop., 449." In *Union Stockyards Co. v Nashville Packing Co.*, 140 F. 701 (C.C.A. 6th 1905), a Davidson County Chancery Court case removed to federal court and decided by the Sixth Circuit Court of Appeals, plaintiff conveyed land to defendant for construction of a packing house which was built but later abandoned. The appellate court held that the condition was a condition precedent for the vesting of title, but not a condition subsequent for which a reversion might be claimed, and was a covenant for breach of which damages might be claimed in a separate, subsequent suit. The opinion contains the following discussion on the validity of restrictions without time limit:

> ... Another feature of the transaction which seems to us of much significance is that no time was fixed during which the obligation to maintain and operate the packing house should endure. It seems to be hardly reasonable to suppose that the parties could have understood that this covenant should continue to operate perpetually. Indeed, one can hardly withstand the conviction that the covenant was expected by the parties to have some limitation in respect of time, and, if so, it might be a question whether any other limitation is more natural or probable than that it should abide such contingencies of the business as could not in the natural course of things be avoided, as, for instance, could not, with prudent management, be carried on without loss. Of course, we are not now undertaking to lay down a particular definition of the contingencies which might terminate the obligation. It is enough for the present purpose of construing the covenant to say that it seems unreasonable to think that the parties intended it to be interminable in its operation....

> ... A similar question with respect to the duration of the covenant, when there was no limitation in respect of time, has been presented in several reported cases, and the view which has been generally taken is that, when the time is not limited by the language employed, it should be implied that some limitation was intended and that it was such as the nature of the case would indicate as reasonable. Among other cases are *Jones v. Newport News & M. V. Co.*, 65 Fed. 736, 13 C.C.A. 95, 31 U.S.App. 92, decided by this court; *Mead v. Ballard*, 7 Wall. 290, 74 U.S. 290, 19 L.Ed. 190; *Texas & Pacific Ry. Co. v. Marshall*, 136 U.S. 393, 10 Sup.Ct. 846, 34 L.Ed. 385; *Willson v. Winchester & P.R. Co.*, 99 Fed. 642, 41 C.C.A. 215; *Murdock v. Mayor, etc., of Memphis*, 7 Cold. (Tenn.) 483. In this latter case the court expressed the opinion that the question was to be resolved upon the analogy of the general rule that, where no time is fixed, reasonable time is implied.

140 F. at 705-706.

Likewise, in option contracts, our Supreme Court has found that the reasonable time standard applies, to wit:

> Appellants present for review the issue of whether the optionee complied fully with the terms of the option, a condition precedent to the granting of specific performance, and insist that because the option was required to be exercised "within the prescribed time" the Chancellor erred in finding that a reasonable time would be allowed. We agree with the reasoned findings of the Chancellor that the contract failed to specify the time within which the notice of exercise was to be given, in which event the settled law implies a reasonable time. *Gulf Refining Company v. Belz*, 315 SW2d 403 (Tenn.1958).

There is nothing to indicate that the general reasonable time standard should not be applied to all contracts. In *Minor v. Minor*, 863 S.W.2d 51, 55 (Tenn. Ct. App. 1993), this Court stated that principle as follows:

> Where no provision is made in the contract for performance, a reasonable time is implied. Completion of a contract within a reasonable time is sufficient if no time is stipulated. Where the parties have not clearly expressed the duration of the contract, or where the duration of the contract is indefinite, the courts will imply that they intended performance to continue for a reasonable time. 17A Am.Jur.2d *Contracts* § 479 (1991).

Based upon the foregoing, we find, as a matter of law, that the general reasonable time standard is applicable to those contracts containing conditions precedent, regardless of whether the performance contingency is wholly or partially within the control of the obligor.

Concerning what constitutes a "reasonable time," the *Minor* Court went on to explain:

> What constitutes a reasonable time within which an act is to be performed where a contract is silent upon the subject depends on the subject matter of the contract, the situation of the parties, their intention in what they contemplated at the time the contract was made, and the circumstances attending the performance.

*Id*. (quoting from 17A Am.Jur.2d *Contracts* §479 (1991)).

In short, the determination of what constitutes a reasonable time for the performance of a contract falls to the finder of fact. Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact

by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. *See* Tenn. R. App. P. 13(d).

In *Johnson v. Welch*, No. M2002-00790-COA-R3-CV, 2004 WL 239756 (Tenn. Ct. App. November 9, 2004), the Middle Section of this Court considered the alleged breach of three contracts. The Court noted that the court would not make a new contract for the parties, *see Petty v. Sloan*, 197 Tenn. 630, 640, 277 S.W.2d 355, 359 (1955), but said:

> However, courts may and will incorporate a reasonableness requirement into any contract. *Moore v. Moore*, 603 S.W.2d 736, 739 (Tenn.Ct.App.1980) (holding that "a qualifying word which may be read into every contract is the word 'reasonable,' or its equivalent 'reasonably.' "); see also *Hurley v. Tenn. Farmers Mut. Ins. Co.*, 922 S.W.2d 887, 892 (Tenn.Ct.App.1995) (holding that insurance company's demand for production of financial records and assertion that insured's failure to produce was a breach of the cooperation clause of the insurance contract could be considered unreasonable). In fact, this court has stated that the qualifying word "reasonable" must be read into every contract. *Minor v. Minor*, 863 S.W.2d 51, 54 (Tenn.Ct.App.1993); see also *Hathaway v. Hathaway*, 98 S.W.3d 675, 679 (Tenn.Ct.App.2002) (reasonableness must be read into agreement). In Minor, because the contract did not include a time for performance, a reasonable time was implied, based upon Moore and upon the well-settled rule that missing contract terms may be implied. Id. In *McClain v. Kimbrough Constr. Co.*, 806 S.W.2d 194, 198 (Tenn.Ct.App.1991), this court held that "the extent of contractual obligations should be tempered by a 'reasonableness' standard," citing Moore.
>
> Further, in construing contracts, courts must look at the language and the parties' intent and impose a construction that is fair and reasonable. *ACG, Inc. v. Southeast Elevator, Inc.* 912 S.W.2d 163 (Tenn.Ct.App.1995). Reasonableness must be viewed in light of the parties' situation at the time of the making of the agreement as well as at the time performance becomes due. *Hathaway*, 98 S.W.3d at 680-81. The language of a contract should be construed with reference to the situation of the parties, the business to which the contract relates, the subject matter of the agreement, the circumstances surrounding the transaction, and the construction placed on the contract by the parties in carrying out its terms. *Penske Truck Leasing Co., L.P. v. Huddleston*, 795 S.W.2d 669, 671 (Tenn.1990); *International Flight Center v. City of*

> ***Murfreesboro***, 45 S.W.3d 565, 570 (Tenn.Ct.App.2001).
> Similarly, when a court is called upon to supply a missing term
> with a reasonable one, it must consider the subject matter of the
> contract, the situation of the parties, their intention in what they
> contemplated at the time the contract was made, and the
> circumstances attending the performance. Minor, 863 S.W.2d at
> 54. The course of conduct of the parties is strong evidence of the
> parties' original intent. ***Pinson & Associates v. Kreal***, 800 S.W .2d
> 486, 487 (Tenn.Ct.App.1990).

***Id.*** at *7-8.

In the instant case, the record reflects that the Birkholzes transferred their property, worth approximately one-half million dollars, to the Hardys by payment of a promissory note without any security. The Birkholzes testified that they were informed by the Hardys that the sale of the Goodman Road Property was imminent and they operated under that assumption. The trial court had before it the evidence concerning the circumstance and nature of the transaction between the parties and, taking all of those facts into consideration quite generously for the Hardys, determined that five years was a reasonable time for the performance of their obligation to sell the Goodman Road Property. The evidence does not preponderate against this finding by the trial court.

We will now consider Issue Number Four: Whether the trial court erred in its award to the Hardys on the counter-claim.

In terms of the amount of the Judgment, we find that the evidence does not preponderate against the trial court's finding that the $519,000.00 principal amount should be offset by $5,639.00, which represents a carpet allowance, a landscaping and/or appliance allowance, and a garbage disposal. In his testimony, Mr. Birkholz admitted that this amount was due the Hardys. However, the Hardys urge that they are entitled to a judgment for the full $150,000.00 claimed in their Counter-Complaint. We have reviewed the entire record, and we find that the evidence does not support the Hardys' claim. Consequently, we find that the trial court did not err in denying the full $150,000.00 claim since the evidence only supports an offset of $5,639.00.

Finally, we will consider Issue Number Three: Whether the trial court erred in awarding prejudgment interest.

Prejudgment interest is authorized by T.C.A. § 47-14-123 (2001) and is discretionary with the court. ***B.F. Myers & Son of Goodlettsville, Inc. v. Evans***, 612 S.W.2d 912 (Tenn. Ct. App.1980). In ***Myint v. Allstate Ins. Co.***, 970 S.W.2d 920 (Tenn.1998), our Supreme Court stated:

An award of prejudgment interest is within the sound discretion of the trial court and the decision will not be disturbed by an appellate court unless the record reveals a manifest and palpable abuse of discretion. *Spencer v. A-1 Crane Service, Inc.*, 880 S.W.2d 938, 944 (Tenn.1994); *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 446 (Tenn.1992). This standard of review clearly vests the trial court with considerable deference in the prejudgment interest decision. Generally stated, the abuse of discretion standard does not authorize an appellate court to merely substitute its judgment for that of the trial court. Thus, in cases where the evidence supports the trial court's decision, no abuse of discretion is found. *See State v. Grear*, 568 S.W.2d 285, 286 (Tenn.1978) (applying abuse of discretion standard to trial court's decision to deny request for suspended sentence), cert. denied, 439 U.S. 1077, 99 S.Ct. 854, 59 L.Ed.2d 45 (1979).

Several principles guide trial courts in exercising their discretion to award or deny prejudgment interest. Foremost are the principles of equity. T.C.A. § 47-14-123. Simply stated, the court must decide whether the award of prejudgment interest is fair, given the particular circumstances of the case. In reaching an equitable decision, a court must keep in mind that the purpose of awarding the interest is to fully compensate a plaintiff for the loss of the use of funds to which he or she was legally entitled, not to penalize a defendant for wrongdoing. *Mitchell v. Mitchell*, 876S.W.2d 830, 832 (Tenn.1994); *Otis*, 850 S.W.2d at 446.

*Id*. at 927.

The Supreme Court also noted that, in addition to the principles of equity, two other criteria have emerged from Tennessee common law. The first criterion provides that prejudgment interest is allowed when the amount of the obligation is certain, or can be ascertained by a proper accounting, and the amount is not disputed on reasonable grounds. *Mitchell v. Mitchell*, 876 S.W.2d 830, 832 (Tenn. 1994). The second provides that interest is allowed when the existence of the obligation itself is not disputed on reasonable grounds. *Id*. (citing *Textile Workers Union v. Brookside Mills, Inc.*, 205 Tenn. 394, 402, 326 S.W.2d 671, 675 (1959)).

In the instant case, the trial court awarded the Birkholzes prejudgment interest on $340,000.00 (the amount of the mortgage taken out by the Hardys on or about December 24, 1998). Prejudgment interest was assessed at six percent (6%) from December 24, 1998. Concerning its decision to grant prejudgment interest on the $340,000, the trial court made the following, relevant, statements:

I [the trial court] think taking out the mortgage against the property a short period of time afterwards is clearly an act of bad faith. You've got a house that you say you're going to pay something for and you get the benefit of 340,000, I just– I can't accept that.

\*           \*           \*

...I think there's $340,000 that never should have been taken out of the property....

The purpose of prejudgment interest is not to punish a party. In ***Alexander v. Inman***, 974 S.W.2d 689 (Tenn. 1998), our Supreme Court stated:

> Pursuant to Tenn. Code Ann. §47-14-123, prejudgment interest may be awarded in accordance with the principles of equity. In reaching an equitable decision, a court must keep in mind that ***the purpose of prejudgment interest is to fully compensate a plaintiff for the loss of the use of funds, not to penalize a defendant***....

*Id.* (footnotes omitted) (emphasis added).

From our review of the trial court's comments, it appears that the decision to award prejudgment interest on the $340,000.00 could be punishment against the Hardys for their "bad faith" in taking out the mortgage on the Forest Wind Property. That being said, we do not find that prejudgment interest is not warranted in this case. Based upon the authority outlined *supra*, we find that the Birkholzes are entitled to prejudgment interest on the $513,361.00 judgment, at a rate of six percent (6%), to run from the September 6, 2001 date of the filing of this suit. We remand for calculation of the prejudgment interest amount.

For the foregoing reasons, we affirm the Order of the trial court to the extent that it grants the Birkholzes a $513,361.00 judgment against the Hardys, effective November 24, 2003. We reverse the Order to the extent that it grants prejudgment interest of $88,474.50 on the $340,000.00 mortgage. We find that the Birkholzes are entitled to prejudgment interest on the $513,361.00 judgment, at a rate of six percent (6%), to run from the September 6, 2001 date of filing suit to the effective date of the judgment. We remand for calculation of prejudgment interest pursuant to this opinion. Costs of this appeal are assessed against the Appellants, Clarise B. Hardy and the Estate of Davis N. Hardy, and their sureties.

————

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.