IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 2, 2002 Session

## LINDA SUE LONG HATHAWAY (BRANSTETTER), v. GLENN JEFFERIES HATHAWAY

**Direct Appeal from the Circuit Court for Knox County**
**No. 44828     Hon. Bill Swann, Circuit Judge**

**FILED NOVEMBER 26, 2002**

**No. E2002-00659-COA-R3-CV**

The Trial Court ordered father to pay daughter's tuition to a college of her choice, based upon a provision in the Marriage Dissolution Agreement. On appeal, we modify.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed, as Modified.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

James H. Snyder, Jr., Alcoa, Tennessee, for Appellant, Glenn Jefferies Hathaway.

Ronald J. Zuker, Knoxville, Tennessee, for Appellee, Linda Sue Long Hathaway (Branstetter).

## OPINION

The issue before the Trial Court and this Court is the extent of the father's obligation under the parties' Marital Dissolution Agreement which contains this provision:

The husband shall pay all customary and reasonable tuition expenses for the parties' minor children in obtaining a bachelor's degree or its equivalent.

The parties were divorced on irreconcilable differences in 1987. Their two children were 5 and 2 years old. The ex-wife and children now reside in Florida. The defendant has been employed by the UT Medical center for 19 years as of the date of trial. At the time of the divorce, his gross annual salary was $37,200.00. At the time of trial, his gross annual salary was $50,016.00. He pays $550.00 per month child support and he has another child from the second marriage.

Defendant does not dispute his obligation or his willingness to pay his daughter's tuition. He contends that the MDA should not be interpreted to mean there are no limitations whatsoever on the amount that he is obligated to pay, without regard to the reasonableness of the price, under any circumstances.

The parties' daughter, Adrienne, graduated in the top of her high school class in 1999. She has interest and aptitude in interior design and architecture. She applied and was accepted to the Maryland Institute of Art. The annual tuition for the Maryland Institute of Art is $19,800.00 for the 1999-2000 academic year. Adrienne received a scholarship for $1,000.00 per semester, and obtained loans which reduced the outstanding tuition to $8,972.78 for her freshman year. Defendant paid $2,400.00 toward the bill, and loaned her $10,000.00.

At the hearing the Court ruled based upon "the pleadings touching upon the question of college tuition, the trial briefs with attached authorities, and the legal argument of counsel today in court that this is a matter of law, and not a fact". The Court focused upon the agreement as "important language in what it says and what it does not say", stating:

> It could have had limiting terms. It does not say, for example, at the level of a state institution. It does not say at the level of the University of Tennessee, the University of Maryland. It does not say that reasonable shall be interpreted bearing in mind the payor's circumstances as they obtain at the time of the enrollment of the child.
>
> All of those things could have been here, and they are not here.
> . . .
>
> This contract does not mean that the father shall make payments on tuition which is reasonable for his economic circumstances. It could have said that, or it could have put a cap on it. None of those things was done.
>
> So the question for the Court is whether the tuition incurred by this child, Adrienne– and the Court is very much aware in today's ruling that *there is yet another child who may well consider college in the future and that this ruling will obtain in that case, as well. The question for the Court is whether the tuition incurred by this child, Adrienne, is reasonable given her abilities*, given the school's course of study, given the school's standing. In other words, is this an appropriate school for this child? Is this a good school? Does this college make sense for her? (Emphasis supplied).

-2-

The Court then said:

> This Court holds that in the matter of Branstetter and Hathaway that *it is not for the Court to determine reasonableness* in the sense of comfort, reasonableness in the sense of is that what I would choose to do, reasonableness in is this too large a percentage of my income. This is a contract that the father made which was open-ended and is absolute. (Emphasis supplied).

Ultimately, Judgment was entered for the plaintiff for $8,972.78 for the first year of tuition, and $14,000.00 for the second year. The Trial Court, responding to a post-judgment Motion by the defendant requesting to present evidence on the issue of the reasonableness of the amount and on the issue of the school's being an appropriate fit, was denied, but the Court did set an evidentiary hearing for the defendant to present evidence on the issue of absurdity and/or impossibility only. At the hearing, the Court strictly limited the proof to the issue of absurdity/impossibility, specifically refusing to permit proof on the issue of reasonableness and whether the school was an appropriate fit.

At the hearing, the defendant testified that he could not pay the tuition on his yearly gross income, but always intended to provide a college education for his children; that he pays $550.00 per month child support, and that he has personal savings of $2,000.00. He has no stocks and bonds or 401(k). When Adrienne told him she could not get further loans or financial assistance, he loaned her $7,500.00 from a trust fund, of which he is a trustee, established by his parents for their grandchildren. The trust now has a balance of $400.00.

He further testified that the full tuition at the Maryland Institute of Art is approximately one-half of his annual salary, and there is no fat in his budget that could be cut. Following the hearing, the Court explicitly reiterated and adopted its previous opinion, and additionally found there was no absurdity or impossibility in the father's present circumstances as to financing the tuition. The Court concluded:

> The Court has construed the language of the contract that the father made. It's not one that he likes today. It is, however, the contract that he made. It is the holding of this Court that persons live up to a contract. . . .

The interpretation of a written contract is a matter of law and the scope of appellate review is *de novo* upon the record with no presumptions of correctness of the lower court's conclusions of law. *Rainey v. Stansell,* 836 S.W.2d 117, 118 (Tenn. Ct. App. 1992). The appellate court's role is to review the agreement anew and make an independent determination of its meaning. *See, Hillsboro Plaza Enter. v. Moon,* 860 S.W.2d 45, 47 (Tenn. Ct. App. 1993).

Agreements in marital dissolution agreements for post-majority support are

enforceable contracts, and the payment of college tuition is a valid contractual subject for a husband and wife in the throes of a divorce. *Penland v. Penland,* 521 S.W.2d 222, 224 (Tenn. 1975). Such contractual obligations are binding upon the parties, and will be construed by courts by principles of interpretation as any other contract. *Jones v. Jones,* 503 S.W.2d 924, 929 (Tenn. Ct. App. 1973); *Boutin v. Boutin,* 1996 Tenn. App. Lexis 770, No. 01-A01-9601-CH-00014.

The cardinal rule in interpreting contracts is to ascertain and effectuate the intent of the parties, consistent with legal principles. *Rainey v. Stansell,* 836 S.W.2d 117 (Tenn. Ct. App. 1992). To arrive at that intent, it is appropriate to consider the circumstances of the parties at the time the contract was formed. *Hamblen County v. City of Morristown,* 656 S.W.2d 331 (Tenn. 1983).

The Trial Court found that the defendant must pay all of the tuition, no matter how much or how difficult, because he had not put any limitation upon the obligation in the MDA. However, it is well settled that "[a] qualifying word which must be read into every contract is the word 'reasonable' or its equivalent 'reasonably'. *Minor v. Minor,* 863 S.W.2d 51, 54 (Tenn. Ct. App. 1993). In this case, the parties put "reasonable" in the express language, which negates the Trial Court's interpretation that it is "open-ended and absolute". Moreover, a reasonable and equitable construction is given to all contracts by the courts. *See* 17 ACJS, Contracts §333.

The use of the term "reasonable" does not create an ambiguity. *Hennigan v. Hennigan,* 1999 Tenn. App. Lexis 329, No. 01-A01-9807-CH-00380. The Trial Court restricted reasonableness to "reasonable in terms of the appropriate fit for the child". "Reasonable for the economic circumstances of the payor" was held immaterial. However, the contractual language includes no such limitation on the meaning of reasonableness. The term must be interpreted in accordance with traditional contract law which is reasonable under all the circumstances.

The Trial Court opined that this case is governed by *Hennigan,* focusing upon its language, wherein the Court observed that had the defendant intended to limit either the total amount or a percentage of his obligation for educational expenses, he could have done so in the agreement he signed.

*Hennigan* is distinguishable in several respects. In that case the Trial Court heard evidence relative to a consideration of reasonableness. The opinion went on to state: "While father testified that his current monthly expenses exceed his monthly income, the trial court was not persuaded that the college expenses of his daughter were unreasonable in light of his ability to pay". *Id.* In that case, the father had been aware for some time the daughter was considering expensive institutions, and received a letter two years earlier from the mother that if he planned on limiting the child's choices based on tuition, he needed to talk to the daughter so she wouldn't plan on those schools. Also, he knew she was visiting expensive colleges, and he had taken her to visit Vanderbilt University himself. Finally, this was a high income case in which it would not have been out of the realm or reason to expect that expensive schools were an option. The father's income ranged from $343,690.00 to $583,793.00. We conclude the Trial Court misapplied the *Hennigan* case.

The case before us more closely akin to *Moscheo v. Moscheo,* 838 S.W.2d 226 (Tenn. Ct. App. 1992) where the interpretation of "what is reasonable" was an issue. The operative language in the *Moscheo* agreement was that "husband agrees to pay on behalf of the minor child a reasonable college tuition. . ." for a four-year program. The child attended three different institutions; the first one cost $7,000.00 per semester, the second was $2,690.00. The father paid these obligations, but limited the amount to $6,000.00 for the third school. In construing the contract, this Court held that "reasonable" did not mean "unlimited". The Court said:

> "The question then becomes what is a 'reasonable' amount of tuition? *We think the answer to that question will vary according to the circumstances. . .* We think $6,000 per year is a reasonable amount of tuition under the circumstances of this case. It is in the middle range between the cost of tuition at a good state-supported university and a moderately priced private institution. The agreement does not set a specific figure, but it could hardly be argued that the agreement obligated Mr. Moscheo to pay an unlimited amount, or that the agreement allowed Mrs. Moscheo and/or Angela to unilaterally decide on the college Angela would attend." (Emphasis added).

Id. at 227-228. *Moscheo* was decided after a full evidentiary hearing, and the opinion points out that the Court was not modifying or altering the contract, but only interpreting the reasonableness terms in light of the litigants' circumstances.

In the context of interpretation of divorce settlement agreements containing language ostensibly obligating a parent to pay for college expenses with no limitation stated, this Court in reviewing and considering the issue, found there was a split of authority among jurisdictions. *Vick v. Vick,* 1999 Tenn. App. Lexis 373, No. 02A01-9802-CH-00051. This Court was persuaded that the majority view is the better reasoned approach, which requires determining whether the child's choice of college is reasonable, considering both the child's needs and the parent's ability to pay. Id. at 19. The Court concluded that this rule is more consistent with the contract's implied condition of reasonableness, as held in *Moore.* The *Vick* opinion relied heavily upon the rationale and analysis of *In re Marriage of Schmidt,* 684 N.E.2d 1355 (Ill. Ct. App. 1997). *Schmidt* is consistent with *Moscheo* in its finding that because the agreement contained no limitation on the defendant's obligation, that did not mean the child "could attend any college, regardless of cost". *Id.* at 1362.

"Reasonable" in this case must be viewed in light of the parties' situation at the time of the divorce. Hathaway has been a state employee for 19 or 20 years. His income and earning capacity would be fairly predictable, and obvious to the parties at the time of the divorce. Reasonable for these parties in this income level would not be the same as in *Hennegar* where the earnings were well into six figures. The parties in this economic bracket could not reasonably contemplate "the sky is the limit". "[A] tuition amount need not be outrageous in order to be unreasonable. If parents cannot pay what one may consider a modest tuition, that amount is still unreasonable as to them." *Carlton v. Carlton,* 670 So.2d 1129, 1130 (Fla. Ct. App. 1996). Hathaway testified that as a state employee, he was eligible for a substantial tuition discount at the

University of Tennessee, and that Adrienne, as a Florida resident, had options at Florida's universities. He did not insist that she attend any of these schools, but cited them as more in line with his financial ability to pay. The Supreme Court's analysis in *Barnett v. Barnett,* 27 S.W.3d 904 (Tenn. 2000), is instructive where it considered the effect of an obligation for extraordinary educational expenses like private school tuition and applying the child support guidelines. The Court's analysis pointed out that the courts' duty was to achieve equity between the parties and should not lead to an interpretation of the guidelines that would achieve an absurd result. The lower Courts were directed to consider the income of each parent in order to allocate the extraordinary expense, and in light of that, consider whether a downward deviation was appropriate for the obligor. The Supreme Court said that wholesale, automatic imposition of educational expenses upon an obligor, without considering all the circumstances, could conceivably amount to a large percentage of income, "even to the extent of absorbing every penny of the obligor's income . . ." and result in impoverishing one parent. Such a result would be an absurdity, the Court noted. Courts must consider the practical results of their decisions, and not inflexibly apply a rule with no thought to the consequences.

In this case, the Trial Court acknowledged that his decision would impact the future years' payment obligations as well as the second child, but seemingly ignored the potential consequences of imposing an unlimited obligation upon Hathaway.

The Trial Court was in error in holding that Mr. Hathaway's income and ability to pay were not to be considered in construing the MDA and limiting defendant's evidence to proof of impossibility or absurdity. The Court further erred in making a finding of fact on the reasonableness of the daughter's choice of the Maryland Institute of Art, finding that it was an excellent fit, absent evidence in the record and in denying defendant the opportunity to present proof on the issue. The Court also found the defendant had not explored the possibility of utilizing his home equity without evidentiary support for this conclusion. The Court admitted it was making a finding without evidence, because the issue is a matter of law. Statements of counsel are not evidence or a substitute for testimony, and judgment based upon neither evidence nor stipulation of the parties may be vacated if evidence is the basis of the holding. *State v. Cleveland*, 959 S.W.2d 548, 555 (Tenn. 1997); *Metropolitan Gov't of Nashville v. Shacklett*, 554 S.W.2d 601, 605 (Tenn. 1977); *Valley Utility District v. Cantwell*, 2002 Tenn. App. Lexis 30, No. M2001-00627-R3-CV.

Taking into account the circumstances of the parties at the time of the divorce and at the time of hearing, we hold that it is reasonable for the father to pay the tuition of the daughter to obtain a bachelor of arts degree at any accredited public institution of higher learning in either the State of Florida or the State of Tennessee, whichever is higher. The daughter is not required to attend any of these institutions, but this formula will be utilized as a measure of her father's obligation, which he will be required to pay should she attend another institution of her choice. Upon remand, if the parties cannot agree upon the amount, a further evidentiary hearing will be conducted to determine that amount, and Judgment entered in accordance with this Opinion.

For the foregoing reasons, we modify the Judgment of the Trial Court and remand,

with the cost of the appeal assessed one-half to each party.

_____
HERSCHEL PICKENS FRANKS, J.