IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 16, 2010 Session

## LARRY B. BRINTON, JR. v. LISA A. BRINTON

**Appeal from the Circuit Court for Davidson County**
**No. 89D-1698     Carol Soloman, Judge**

**No. M2009-02215-COA-R3-CV - Filed May 19, 2010**

Father and Mother divorced in 1989 with the marital dissolution agreement obligating Father to pay all expenses for four years of college and graduate school for both son and daughter. Father refused to pay the entire cost of college for both but did pay $20,000 a year for each, deeming that reasonable. Mother sued. The trial court found that the children's choices of college were reasonable and that Father could afford the college costs. The trial court awarded Mother the costs she incurred in sending the children to college, interest and attorney's fees. Father appealed. We affirm and, based on the attorney fee provision of the MDA, remand for a determination of attorney's fees for Mother on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Gregory Dye Smith and Rebecca Kathryn McKelvey, Nashville, Tennessee, for the appellant, Larry B. Brinton, Jr.

George Ellis Copple, Jr., Nashville, Tennessee, for the appellee, Lisa A. Brinton.

## OPINION

BACKGROUND

The seeds of this lawsuit were planted in the parties' 1989 Marital Dissolution Agreement. Rooted in the MDA is the following provision: "Husband will be responsible for all education expenses of the children, including tuition, room, board, books, travel expenses, fee assessments, etc. for both children for four years of college at a school of his/her choice, plus graduate work." The provision lay dormant, but not forgotten, for

approximately 14 years. It sprouted from the soil of everyday life when the parties' son, Matt, was graduating from high school and considering colleges. It continued to grow in significance as the children's father, Larry Brinton, Jr. (Brinton), refused to cover the entire cost of Matt's attendance at DePaul and the first year's attendance at Vanderbilt for their daughter, Laura. It finally reached full bloom in June 2007 when their mother, Lisa Brinton Curtis (Curtis), sued Brinton for the funds she had to pay over and above Brinton's contribution for the children's college educations.

The basic facts outlined above were filled out in a trial held in July 2009. Neither party remembered any details of negotiations regarding the college provision. There is no real evidence in the record of the parties' standard of living at the time of their divorce. It is evident that Brinton has been rather successful, at least in recent years, since his income between 2003 and 2008 ranged from a low of $226,237 in 2003 to a high of $505,901 in 2005. His tax returns reflect gambling winnings and losses of $480,066 in 2007 and $882,360 in 2008.[1] With his current wife, Brinton owns a house valued at approximately $900,000 with at least $500,000 in equity. At the time of the trial, he expected to receive in April 2010 a payment of at least $350,000 for the prior sale of a business.

Although the education provision in the MDA is unrestricted, Brinton maintains that reasonableness must be read into the provision. He testified:

> I think there should be several things considered when you're talking about reasonableness: One, cost; two, grades. I don't think the kids should be able to go to school for six or seven years on the party plan. I think they should have reasonable grades. Both my kids are extremely intelligent. . . . And I think both parents should have at least some input as to where they go. . . . Both these situations here, especially the situation with Laura, it was definitely unreasonable.

Matt wanted to go to DePaul University but did not apply for scholarships or employment. Brinton said it was too expensive. In addition, Brinton opposed DePaul because Matt had no academic reason for going there; he just wanted to go to school in Chicago. Brinton told Curtis and Matt that he would pay $20,000 a year toward Matt's college expenses. This did not cover all of the expenses associated with going to DePaul. Curtis testified that when she raised the MDA college provision, Brinton said, "I don't care

---

[1]According to the record, one is not allowed to deduct gambling losses except to the extent of gambling winnings, so the tax returns do not reflect Brinton's actual losses. Brinton admitted to losing money each year gambling.

what it says. That's all I'm paying." Matt's college expenses averaged about $30,000 a year. Since Brinton paid $20,000, Curtis paid the difference.

Laura's situation is more complicated. She had a full scholarship to attend Birmingham Southern but declined to attend after she broke up with her boyfriend. She was offered an almost full scholarship to Auburn but declined to go there as well. She applied to Vanderbilt after the financial aid deadline, was accepted, and decided to attend there.

Although he was unhappy with Laura's decisions, Brinton was willing to provide Laura with $20,000 a year, just as he had with Matt. Curtis again reminded Brinton of the provision in the MDA:

> And I said, "Larry, that is not how much you're supposed to pay. The marital dissolution agreement says" – – and I even pulled it out, my old yellowed copy, turned to the page, and said – – this was a telephone conversation – – "You are supposed to pay for all of the tuition." He said, "I am not paying it. I don't care what that says. If you don't like it, take me to court, see what happens to you. Take me to court. Go ahead."

So, Curtis paid the difference in order for Laura to attend Vanderbilt.

Curtis sued Brinton to enforce the provision of the MDA and require Brinton to pay her $54,253.89, plus interest and attorney's fees. By the time of the trial, the reimbursement sought by Curtis was $96,054.89,[2] plus interest and attorney's fees. The trial court awarded Curtis $96,054.89 for principal, $28,782.53 in pre-judgment interest at the rate of 10% per annum, and $14,570.06 in attorneys fees, for a total judgment of $139,407.48. Brinton appealed.

STANDARD OF REVIEW

A marital dissolution agreement is a contract. *Pylant v. Spivey*, 174 S.W.3d 143, 151 (Tenn. Ct. App. 2003). Since the interpretation of a contract is a question of law, no presumption of correctness attaches on appeal to the trial court's interpretation. *Id*. at 150. The trial court's factual findings, however, are reviewed de novo upon the record with a presumption of correctness unless the record indicates otherwise. *Id*. at 151; Tenn. R. App. P. 13(d).

---

[2]The amount for principle increased due to Laura's continued attendance at Vanderbilt during the pendency of the litigation.

ANALYSIS

A parent's agreement to provide for college education expenses beyond the age of the child's majority is a valid contractual obligation. *Penland v. Penland*, 521 S.W.2d 222, 224 (Tenn. 1975). As a general rule, "where the parties have unambiguously set out the terms of their agreement, courts will enforce those terms as written, regardless of any inequity arising from that enforcement." *Pylant*, 174 S.W.3d at 152. The language of the education provision limits Brinton's liability to four years of college plus graduate school with no express limits on cost, type or location of the college or the length, cost, type or location of the graduate school: "Husband will be responsible for all education expenses of the children, including tuition, room, board, books, travel expenses, fee assessments, etc. for both children for four years of college at a school of his/her choice, plus graduate work."

The courts of Tennessee read an implied condition of reasonableness into such agreements. *Id*. at 152-53; *Hathaway v. Hathaway*, 98 S.W.3d 675, 680 (Tenn. Ct. App. 2002); *Vick v. Vick*, No. 02A01-9802-CH-00051, 1999 WL 398115, at *7 (Tenn. Ct. App. June 16, 1999). In order to determine the reasonableness of the college, our courts look to whether the chosen college fits the child's needs and the obligated parent's ability to pay for that college. *Pylant*, 174 S.W.3d at 156; *Hathaway*, 98 S.W.3d at 681; *Vick,* 1999 WL 398115 at *7.

Brinton's objection to Matt's choice of DePaul is essentially grounded in cost and the lack of an academic reason for Matt going there. Matt stated that he chose DePaul because he wanted to live in Chicago. The record indicates that Matt graduated from DePaul in three and one half years and did well enough to be accepted into Southwestern Law School. This success is evidence that DePaul was a good fit for Matt, and there is no evidence to the contrary. Furthermore, we must observe that the choice of a college involves many factors, and location is a primary one for many students. DePaul is a respected university, and Chicago offers many educational, cultural and entertainment options for young men and women. On this record, we cannot say that the evidence preponderates against the trial court's decision that DePaul was a reasonable choice for Matt.

Brinton objects to Laura's choice of Vanderbilt for cost reasons as well; she turned down a full scholarship to Birmingham Southern and a substantial scholarship to Auburn. She applied to Vanderbilt too late to seek a scholarship but chose to attend there anyway. Laura stated that she rejected Birmingham Southern because she broke up with her boyfriend who went there and "after reality set in, I decided that I wanted to go to a school fitting of my grades." The reason for passing on Auburn is not clear except that she favored Vanderbilt.

-4-

The sacrifice of scholarships goes toward the parent's ability to pay, not the appropriateness or reasonableness of the school for the student. Laura decided Vanderbilt was the best school for her. In her deposition, she indicated that it was her choice to apply to Vanderbilt, and she believed it was a better school than the other ones to which she had applied. Laura's deposition testimony is supported by her mother's testimony that Laura "decided, 'I want to go to a really good school. I want to go to Vanderbilt.'" Thus, it is clear that Vanderbilt's overall academic quality convinced her to choose to go to school there. While Laura's grades were not very good her first year, her grades improved to the point of being on the Dean's list in the first semester of her junior year. Whatever the source of her academic problems her first year, "partying" too much as her father suggested or just adjusting to college, she seems to have resolved them. This court cannot say, based on this record, that Laura's choice of Vanderbilt was an unreasonable one for her, considering that she wanted to go to a "really good school," it was not above her abilities, and her parents live in the Nashville area. The preponderance of the evidence supports the trial court's decision.

Now we turn to Brinton's ability to pay for his children's respective college expenses. He is a successful person. His lowest income between 2003 and 2008 was $226,237 in 2003. He engages in gambling. His tax returns show gambling winnings and losses of $480,066 in 2007 and $882,360 in 2008, as well as smaller amounts in prior years.

Brinton contends that $20,000 a year for each child is reasonable. Yet, when asked why he chose that amount, he answered, "I just came up with a number." Without further support,[3] we cannot say, in light of Brinton's income and lifestyle, that there is any evidence that $20,000 per child is reasonable. Furthermore, again in light of Brinton's income and lifestyle, we cannot say that the college expenses for his children are unreasonable.

Brinton also argues that Curtis is prohibited from seeking more than $20,000 per year per child based on the theories of waiver, estoppel and laches. In assessing these theories, the provisions of the MDA should be kept in mind. In particular, the MDA says that it cannot be modified or waived except in writing. It also says that the parties agree that the provisions of the MDA are fair and equitable.

As a general rule, whether a waiver of a contractual provision has occurred is a question of fact. *Gaston v. Tenn. Farmers Mut. Ins. Co.,* 120 S.W.3d 815, 819 (Tenn. 2003). "The law will not presume a waiver, and the party claiming the waiver has the burden of

_____

[3]Brinton testified that the $20,000 a year would pay for the costs of attending the University of Tennessee. There was, however, no testimony indicating that $20,000 was reasonable in light of all the circumstances or that he picked that amount with the University of Tennessee in mind. It was just a number he apparently picked out of the air that he decided he would pay.

proving it by a preponderance of the evidence." *Jenkins Subway, Inc. v. Jones,* 990 S.W.2d 713, 722 (Tenn. Ct. App. 1998). A waiver is proven by "a clear, unequivocal and decisive act of the party," showing a decision to give up the right or benefit which is waived. *Collins v. Summers Hardware & Supply Co.,* 88 S.W.3d 192, 201 (Tenn. Ct. App. 2002)*; Springfield Tobacco Redryers Corp. v. City of Springfield,* 293 S.W.2d 189, 198 (Tenn. Ct. App. 1956).

Brinton claims that Curtis's waiver is shown "by the fact that Ms. Curtis, through her acts, manifested an intent and purpose not to claim a known right." This alleged intent, according to Brinton, is shown by Curtis waiting over four years after Matt began college to seek reimbursement. Under the facts of this case, Brinton has failed to prove a waiver. We find no act on the part of Curtis showing an intent to waive her right to enforce the college expenses provision of the MDA.

Brinton's estoppel argument is also based on Curtis's conduct. Estoppel has been defined as:

> the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy.

*In re Estate of Baker v. King*, 207 S.W.3d 254, 263 (Tenn. Ct. App. 2006) (quoting *Beazley v. Turgeon*, 772 S.W.2d 53, 58 (Tenn. Ct. App. 1988)).

Estoppel is established, according to Brinton, by the fact that he "relied on Curtis' agreement that he would be responsible for the payment of college education expenses for each child up to the amount of $20,000.00 per year but not more than $20,000.00 per year." As evidence of her agreement, Brinton cites to her acceptance of his checks for Matt and Laura's education. Yet, Curtis reminded Brinton of his obligation under the MDA before each child went to college. When she raised the MDA obligation regarding Laura, Brinton said, "If you don't like it, take me to court, see what happens to you. Take me to court. Go ahead." She did so in June 2007 when it became clear Brinton would continue on the course he had set. She testified that taking Brinton to court was "a last resort." Under the facts of this case, we decline to find estoppel.

Brinton also raises the doctrine of laches. Laches is established when there has been "neglect or omission to assert a right which, taken in conjunction with the lapse of time, causes prejudice to the adverse party." *First Am. Bank of Nashville v. Woods*, 734 S.W.2d

622, 632 (Tenn. Ct. App. 1987). "Laches is actually based on equitable estoppel and is dependent upon the facts and the equities of each individual situation." *Clark v. Am. Nat'l Bank & Trust Co.*, 531 S.W.2d 563, 572 (Tenn. Ct. App. 1974).

> [T]he doctrine is usually applied where no statute of limitations governs the case. However, on occasions the doctrine is applied to bar a stale claim prior to the running of the statute of limitations; but it should be applied in such cases when there is gross laches in the prosecution of the claim.

*Id*. Gross laches " requires (1) unreasonable and inexcusable delay in filing the action; (2) loss of evidence; and (3) prejudice to the defendant." *In re Pac. E. Corp.*, 223 B.R. 523, 526 (M.D. Tenn. 1998).

Curtis asserted her right under the MDA as to both children when each went to college. We do not find her delay in enforcing the MDA unreasonable or inexcusable.[4] No evidence was lost. Brinton maintains he was prejudiced by her delay in filing the petition because of the amount of interest assessed against him. In essence, Brinton maintains that Curtis should have made him do right sooner. He breached the MDA based on a figure he "just came up with," and he admits he has the ability to pay. We find that neither laches nor gross laches[5] are applicable to this situation.

Brinton raised as an issue the refusal of the trial court to consider Curtis's income and assets in requiring Brinton to pay the entire cost of the children's colleges. Brinton did not brief this issue and it is therefore waived. Tenn. R. App. P. 27; *In re Estate of Espey*, 729 S.W.2d 99, 103 (Tenn. Ct. App. 1986); *Painter v. Toyo Kogyo of Japan*, 682 S.W.2d 944, 951 (Tenn. Ct. App. 1984).

Curtis seeks attorneys fees for this appeal. The MDA states:

> In the event of one party's breach of any of the terms of this agreement, the breaching party shall be responsible for all reasonable expenses incurred in enforcing this agreement and remeding [sic] the breach, including, but not limited to, Court costs, attorneys fees and travel costs.

---

[4]We note that the statute of limitations for contracts is six years. Tenn. Code Ann. § 28-3-109.

[5]The lack of gross laches combined with the existence of a statute of limitations renders the doctrine of laches inapplicable, since "the doctrine is usually applied where no statute of limitations governs the case." *Clark*, 531 S.W.2d at 572.

Curtis is entitled to attorney's fees in her successful effort to enforce the MDA, and her attorney has thoughtfully attached a fee statement to his brief concerning his efforts on post-trial motions and the appeal. We decline the invitation to order a specific amount of fees, however, since Brinton has not had an opportunity to examine and contest them if he so chooses. Therefore, we award appellate attorney's fees to Curtis in an amount to be determined by the trial court upon remand.

CONCLUSION

We affirm the decision of the trial court finding Brinton responsible for the college educational expenses of Matt and Laura. We remand the matter to the trial court for the purpose of awarding attorney's fees on appeal to Curtis. Costs of appeal are assessed against appellant Brinton, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE