IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 11, 2013 Session

## GERET JESSE JOHNSTON
v.
## SUSAN HARWELL

**An Appeal from the Chancery Court for Maury County**
**No. 06-414      Robert L. Holloway, Jr., Chancellor**

**No. M2012-01808-COA-R3-CV - Filed July 16, 2013**

This post-divorce appeal involves the termination of a parent's obligation to pay support for his two college-age children. The parties were divorced in Hawaii. Under the Hawaii divorce decree, the father was obligated to pay child support for the parties' two children until they finished their post-high school education or until they reached age 23, whichever was earlier. Subsequently, both parties and their children all moved to Tennessee. Years later, disputes arose and the parties eventually resolved them by agreement. The trial court entered an agreed order assuming jurisdiction over the matter, enrolling the Hawaii divorce decree, and adopting the parties' agreed permanent parenting plan. The agreed parenting plan was silent on the duration of the father's child support obligation. Later, after both children reached age 18, the father filed a motion to terminate his child support obligation, arguing that he is not obligated to support his children beyond the age of majority under Tennessee law. The trial court granted the father's motion and terminated his child support obligation. The mother now appeals. We hold that, by consenting to the prior agreed order enrolling the Hawaii divorce decree without modification of the duration of child support, the father agreed to assume the obligation to pay child support until age 23. This agreement, incorporated into the Tennessee court's order, is enforceable. Therefore, we reverse the trial court's termination of the father's child support obligation.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Reversed and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Joy Davis Collier, Franklin, Tennessee, for the Respondent/Appellant, Susan Harwell (formerly Johnston)

Michael D. Cox, Columbia, Tennessee, for the Petitioner/Appellee, Geret Jesse Johnston

**OPINION**

Petitioner/Appellee Geret Jesse Johnston ("Father") and Respondent/Appellant Susan Harwell (formerly Johnston) ("Mother") were married and lived as a family in Hawaii. Father is a noncommissioned officer ("NCO") in the United States Army. Two children were born of the marriage, a son born in January 1993, and a daughter born in March 1994 (referred to individually as "Son" or "Daughter," collectively as "children").

On October 9, 2003, the parties were divorced by final decree entered in the Family Court of the First Circuit for the State of Hawaii. The Hawaii divorce decree granted the parties joint custody of their children. It further provided: "Upon the conclusion of the [2003-2004] school year, it is the parties' mutual aspirational goal and intent that the parties shall reside in the same geographic vicinity in Newport News, Virginia, at which time, the parties shall have joint physical custody pursuant to [the] terms and conditions to be determined at that time." This provision reflects the parties' expectation at the time that, after the divorce, Father would move with the military to Newport News, Virginia, and Mother and children would move to Columbia, Tennessee. While the parties were living in different states, they agreed that Mother would be the primary residential parent. Then, at the end of the 2003-2004 school year, they expected that Mother and the children would move to Virginia to be near Father, and the parties could then share joint physical custody of the children.

The Hawaii divorce decree required Father to pay Mother $1,010 per month in child support. The decree anticipated that this amount would be "redetermined" upon Father's move to Virginia. Father's child support obligation was to "continue uninterrupted" for each child until they finished their post-high school education or until they turned 23 years old, "whichever occurs first." The Hawaii divorce decree provided:

> C. <u>Duration of Child Support</u>. Payments of child support shall continue for each child until the child attains age eighteen years, or graduates from high school, or discontinues high school, whichever occurs last. Child support for each child shall further continue uninterrupted (including during regular school vacation periods) for so long as the child continues their education post high school on a full-time basis at an accredited college or university, or in a vocational or trade school, or until the child attains the age of twenty-three years, whichever occurs first.

In this opinion, we will at times refer to this paragraph as "the duration provision" in the Hawaii divorce decree.

Contrary to the expectation reflected in the divorce decree, Mother did not relocate to Virginia after the 2003-2004 school year. Instead, she and the children remained in Columbia, Tennessee, where they lived at the time of the proceedings below.

In 2006, Father lived in Hampton, Virginia. On July 27, 2006, Father filed a petition in the Chancery Court of Maury County, Tennessee, entitled "Petition to Enroll Foreign Decree Granting Absolute Divorce and Awarding Child Custody and For Enforcement and For Contempt." In this petition, Father asked the trial court to first enroll the Hawaii divorce decree in Tennessee, and then hold Mother in contempt of that decree. On September 21, 2006, Mother filed her response to Father's petition, as well as a counterpetition for contempt. She agreed that the Hawaii divorce decree is a valid decree entered by the Hawaii family court, but she argued that she was not in violation of its terms. In her counterpetition, Mother asked the trial court to increase Father's child support obligation in light of his move to Virginia and a significant variance in his income.

This set the stage for protracted litigation that lasted some three years. At some point during that time, Father moved to Tennessee.[1]

On July 2, 2009, the parties participated in mediation. The mediation was successful, and they settled most of their disputes. A final report of the mediator was filed with the trial court.

Shortly after the mediation, on July 6, 2009, the trial court entered an order indicating that the parties had "agreed to the resolution of certain issues pending before the Court and reserved certain other issues for purposes of trial."[2] Relevant to this appeal, the order approved the parties' agreement that "the Chancery Court of Maury County will assume jurisdiction of this matter," and that the Hawaii divorce decree "is thus enrolled and shall become an Order of this Court." An agreed permanent parenting plan ("Parenting Plan") executed by the parties was "incorporated by reference and shall become the Order of the Court." The Parenting Plan addresses the amount of Father's child support obligation, stating that it will be $1,154 per month when he is not deployed, and will increase to $1,329

---

[1]The date on which Father moved to Tennessee is not clear in the appellate record. Nevertheless, the parties do not dispute that, by the time the parties reached an agreement about their parenting issues, Mother, Father, and the children were are all residents of Tennessee.

[2]The record is unclear on the nature of the issues that were "reserved," but none are pertinent to the issues in this appeal.

per month when he is deployed.[3] The Parenting Plan was silent on the duration of Father's child support obligation.[4] Thus, under the Tennessee trial court's July 2009 agreed order, the Hawaii divorce decree and the Parenting Plan — together — became part and parcel of an "Order of the Court."

Almost two years later, around March 2011, Father returned to Tennessee from an overseas deployment. He expected to visit with the children upon his return, but this did not occur. On March 11, 2011, Mother filed an *ex parte* motion for a restraining order against Father, seeking to suspend his visitation with their children; she alleged that anticipation of visits with Father were causing the children anxiety and other problems. On the same day, the trial court issued a temporary restraining order against Father, enjoining him from removing the children from Mother's custody and from "interfering with the children[']s daily routines and activities pending further orders of the Court." On March 28, 2011, Father filed a motion to enjoin Mother from obstructing his communication with the children and from making derogatory remarks to the children about him.

In early April 2011, the trial court conducted a hearing on the parties' motions. Later that month, the trial court entered an order noting that the parties' Son had reached the age of 18. In light of this, the trial court held that Son was not subject to the *ex parte* restraining order issued previously. It noted that Daughter was still a minor; at the time, she had just turned 17 years old. The trial court found it in Daughter's best interest to continue the temporary restraining order against Father. It added that Daughter was permitted to contact Father if she so desired, and that Mother "shall not discourage her from doing so." Father, Mother, and Daughter were ordered to attend family counseling.

In July 2011, Mother filed a motion for contempt against Father, alleging that he had not complied with the provisions of the July 2009 Parenting Plan. In September 2011, Father

---

[3]Contemporaneous with the order approving and adopting the Parenting Plan, the trial court entered an "Order of Wage Assignment." The wage-assignment order stated:

> An Order of child and/or spousal support in this matter having been entered in this cause on the 2nd day of July, 2009, the following Wage Assignment Order will be entered:
>
> 1. The employee below has been ordered to pay child support, in accordance with the Tennessee Child Support Guidelines, in the amount of $1,154.00 per month.

[4]The agreed order also required Father to participate in the scholarship process for the minor children, and required the parties to make available for each other any home movies and/or photographs within their possession.

filed a motion asking the trial court to lift the temporary restraining order to permit him to contact Daughter in a therapeutic setting.

Many months later, in May 2012, Father filed a motion to modify his child support obligation as to both children. Father requested that the trial court terminate his child support obligation on the date each child reached age 18 and graduated from high school.[5] Father noted in the motion that Son, then 19 years old, "will graduate from high school in May 2012. Therefore, Father [sought] to modify his child support pursuant to the Child Support Guidelines."[6] Father argued that the terms of the Parenting Plan in the July 2009 order superceded the terms of the Hawaii divorce decree. Consequently, Father argued, his child support obligation for each child ends when each reaches age 18 and graduates from high school under Tennessee law. In the motion, Father claimed that Mother wanted "to cherry pick what parts [of the Hawaii divorce decree] she wants amended and leave in place the rest," and that the trial court should not allow her to do so.

In her response to Father's motion, Mother argued that the trial court did not have the authority to modify the duration of Father's child support obligation as set out in the Hawaii divorce decree. She argued that the matter is governed by the Uniform Interstate Family Support Act ("UIFSA" or "the Act"), Tennessee Code Annotated § 36-5-2201, *et seq.*, which controls the establishment, enforcement, and modification of support orders across state lines. According to UIFSA, Mother claimed, the Tennessee "registering" court is allowed to modify the decree from the Hawaii "issuing" court only as to "those portions of the decree that would be modifiable under the issuing state's law." *See* Tenn. Code Ann. § 36-5-2611(c). In support of her argument, Mother cited to the comments to the official text of Tennessee's UIFSA statutes, which include the following example:

> For example, if child support was ordered through age 21 in accordance with the law of the issuing state and the law of the forum state ends the support obligation at 18, modification by the forum tribunal may not affect the duration of the support order to age 21.

---

[5] Father also asked the trial court to dissolve the order enjoining Father from contacting Daughter because she had reached the age of 18. Father argued that the trial court "no longer [had] jurisdiction to restrain [Father's] contact with her." The trial court granted his request.

[6] According to Mother, in Fall 2012, Son enrolled as a full-time student at Columbia State Community College and has been accepted to Berry College in Rome, Georgia, for the Fall 2013 semester, where he plans to continue his post-secondary education as a full-time student. Mother also asserts that Daughter graduated from high school in Spring 2013 and has also been accepted to Berry College for the Fall 2013 semester as a full-time student.

Tenn. Code Ann. § 36-5-2611(c) cmt.  Mother also asserted that the 2009 Parenting Plan did not nullify the duration of child support set out in the Hawaii divorce decree.  Thus, Mother asked the trial court to deny Father's motion to terminate his child support obligation because the Hawaii divorce decree is enforceable, and because the provision relating to the duration of Father's child support obligation is non-modifiable under UIFSA.

In early July 2012, the trial court heard arguments on Father's motion to modify.  On July 19, 2012, the trial court entered an order entitled "Order Finding Tennessee has Personal Jurisdiction Over the Parties and Subject Matter Jurisdiction to Modify Hawai'i Divorce Decree."  It made the following findings of fact:

> 1.  The Hawai'i Decree is a "child support order" as defined in Tenn. Code Ann. § 36-5-2101(2).
>
> 2.  Hawai'i was the "issuing state" of the child support order as defined in Tenn. Code Ann. § 36-5-2101(13)[.]
>
> 3.  Tennessee has been the "home state" as defined in Tenn. Code Ann. § 36-5-2101(8) for several years.  Based on the Petition filed by Mr. Johnson it appears Tennessee has been the home state since at least six months preceding July 27, 2006.
>
> 4.  The Hawai'i Decree has been registered in Tennessee based on the definition of "register" in Tenn. Code Ann. § 36-5-2101(21) since July 27, 2006.
>
> 5.  Hawai'i no longer has "continuing, exclusive jurisdiction over a child support order" under Tenn. Code Ann. § 36-5-2205(a)(1) because Mr. Johnston, Ms. Johnston and the parties' children are no longer residents of Hawai'i . . . .
>
> 6.  By agreement of the Parties, the Hawai'i Decree was modified after it was registered in Tennessee.  The Order entered by the Chancery Court of Maury County on July 6, 2009, states: "This court is pleased to ratify and approve the agreement of the parties as more particularly set forth below."  The Permanent Parenting Plan was approved for entry as shown by the signatures of the parties and their attorneys.

The trial court then noted that, according to UIFSA, "[m]odification of the registered child support order is now an intrastate matter" because all of the parties — Mother, Father, and

the children — were residents of Tennessee. ***See*** Tenn. Code Ann. § 36-5-2613(a). As such, the trial court held, UIFSA required it to apply "the procedural and substantive law of [Tennessee] to the proceedings for enforcement and modification" of the Hawaii divorce decree. Tenn. Code Ann. § 36-5-2613(b). Interpreting UIFSA, the trial court stated that it "may not modify any aspect of a child support order registered in Tennessee that may not be modified under the law of" the issuing state. Tenn. Code Ann. § 36-5-2611(c). Against this backdrop, the trial court then considered whether the Hawaii divorce decree was modifiable under the laws of Hawaii.

In reviewing the relevant Hawaii statutes and Hawaii child support guidelines, the trial court stated: "Hawaii law allows for modification of child support orders, including provisions concerning child support paid for adult children who are full-time post high school students. The twenty-three age limitation does not establish the duration of the obligation of support."[7]

Having determined that the relevant provision of the Hawaii divorce decree was modifiable under Hawaii law, the trial court then applied Tennessee procedural and substantive law to Father's request for termination of his child support obligation, citing UIFSA, Tennessee Code Annotated § 36-5-2613(b). In doing so, the trial court, in reliance upon ***Corder v. Corder***, 231 S.W.3d 346, 355-56 (Tenn. Ct. App. 2006), recognized that "parents in Tennessee generally have no legal duty to support a child past the child's majority." ***See*** Tenn. Code Ann. § 34-1-102(b). Based on this premise, the trial court concluded that it had "no authority to order [Father] to pay child support for his adult [children] who [have] graduated from high school."[8] Thus, the trial court effectively modified the duration of Father's child support obligation to terminate it when the children turn 18 and graduate from high school, instead of requiring Father to pay child support for the children while they are in college up to age 23. From this order, Mother now appeals.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Mother makes two arguments. She claims that the trial court erred in holding that it had subject matter jurisdiction under UIFSA to modify the duration of child support set out in the Hawaii divorce decree. Alternatively, she claims that, even if the trial court had subject matter jurisdiction to modify the duration provision in the Hawaii divorce decree, the

---

[7]In reaching this conclusion, the trial court relied in large part on ***Jaylo v. Jaylo***, 262 P.3d 245, 251 (Haw. 2011).

[8]At the time the order was entered, it applied to Son, who had graduated from high school, but not to Daughter, who had not yet graduated from high school. For purposes of appeal, we assume that Daughter has now graduated from high school, so our holding applies equally as to both children.

-7-

trial court erred in holding that the provision is modifiable under Hawaii law. Because the duration provision is not modifiable under Hawaii law, Mother argues, the Tennessee court may not modify it. In response, Father argues that the trial court properly applied Tennessee substantive law to his petition for modification, because "the Hawaii agreement requiring Father to pay child support until twenty-three (23) was modifiable."

Subject matter jurisdiction implicates a court's power to adjudicate a particular case or controversy. *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004); *Earls v. Mendoza*, No. W2010-01878-COA-R3-CV, 2011 WL 3481007, at *5 (Tenn. Ct. App. Aug. 10, 2011). "In the absence of subject matter jurisdiction, a court cannot enter a valid, enforceable order." *Earls*, 2011 WL 3481007, at *5 (citing *Brown v. Brown*, 281 S.W.2d 492, 497 (Tenn. 1955)). Because a determination of whether subject matter jurisdiction exists is a question of law, our standard of review for this issue is *de novo*, without a presumption of correctness. *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000).

Ordinarily, we review a trial court's decision to modify a parent's child support obligation *de novo* with a presumption of correctness of the trial court's factual findings, unless the evidence preponderates otherwise. *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984). In this case, the facts are undisputed, and the trial court's decision was based solely on its interpretation of the relevant statutes and the application of Tennessee substantive law. Questions regarding the interpretation of statutes and the application of statutes to undisputed facts are issues of law; as such, they are reviewed *de novo*, with no presumption of the correctness in the trial court's conclusions. *U.S. Bank N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 386 (Tenn. 2009). Furthermore, a trial court's "orders and judgments should be construed like other written instruments, and . . . the interpretation of written instruments involves questions of law that are reviewed *de novo* without a presumption of correctness." *Konvalinka v. Chattanooga-Hamilton Co. Hosp. Authority*, 249 S.W.3d 346, 356 n. 19 (Tenn. 2008) (citing *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006); *State ex rel. Pope v. U.S. Fire Ins. Co.*, 145 S.W.3d 529, 533 (Tenn. 2004) (internal citations omitted)).

## ANALYSIS

### UIFSA

We briefly review UIFSA to explain why it does not govern our resolution of this appeal. We then address the issues raised.

Generally, UIFSA "controls the establishment, enforcement, or modification of support orders across state lines." *Letellier v. Letellier*, 40 S.W.3d 490, 493 (Tenn. 2001). In *Letellier*, the Supreme Court explained:

UIFSA is intended to "recognize that only one valid support order may be effective at any one time." Unif. Interstate Family Support Act, U.L.A. (1996) (prefatory notes). Key to promoting UIFSA's intent is the concept of "continuing exclusive jurisdiction." A state that issues a support order has continuing exclusive jurisdiction over that order. No other state may modify that order as long as the issuing state has continuing exclusive jurisdiction.

*Id.*; *see* Tenn. Code Ann. § 36-5-2205 (on continuing jurisdiction). If the issuing state — here, Hawaii — has continuing exclusive jurisdiction, a Tennessee court may modify the out-of-state child support order only after the order is registered in Tennessee and the other requirements in Tennessee Code Annotated § 36-5-2611 are met.

The issuing state loses "continuing exclusive jurisdiction" under certain specified circumstances. Pertinent to this appeal, the issuing state loses continuing exclusive jurisdiction "if all the relevant persons — the obligor, the individual obligee, and the child — have permanently left the issuing state, [because] the issuing state no longer has an appropriate nexus with the parties or child to justify exercise of jurisdiction to modify." Tenn. Code Ann. § 36-5-2205 cmt.; *see Letellier*, 40 S.W.3d at 493 (relying on this comment and noting that Tennessee courts give "substantial deference" to official comments; while official comments are not binding, they are "very persuasive in interpreting the statute"). "[T]he issuing state may also lose its continuing, exclusive jurisdiction to modify if the parties consent in writing for another state to assume jurisdiction to modify (even though one of the parties or the child continues to reside in the issuing state)," if the parties file "a written agreement to that effect with that tribunal." Tenn. Code Ann. § 36-5-2205 cmt.

In the situation in the instant appeal, Hawaii lost its "continuing, exclusive jurisdiction to modify" the Hawaii divorce decree when all of the parties moved away from Hawaii. Tennessee acquired "continuing, exclusive jurisdiction to modify" the Hawaii divorce decree when the parties moved to Tennessee and consented to the Tennessee trial court's order enrolling the Hawaii decree, assuming jurisdiction over the case, and making the Hawaii decree an "Order of the Court."

Thus, by agreement of the parties, in July 2009, the Tennessee trial court enrolled the Hawaii divorce decree and approved the parties' agreed Parenting Plan, making both together an "Order of the Court." After enrollment by the Tennessee trial court, the Hawaii divorce decree "has the same effect . . . as a judgment of a court of record of this state and may be enforced . . . in like manner." Tenn. Code Ann. § 26-6-104(c). The July 2009 order, including the enrolled Hawaii decree, became the operative parenting order.

Almost two years after the trial court entered the July 2009 order, Father filed his May 2012 motion to terminate his child support obligation. Contrary to the apparent presumption of the parties and the trial court, Father's motion did not seek to modify an out-of-state support order governed by UIFSA, because by that time Father's child support obligation was contained in a Tennessee order — the July 2009 agreed order that included the enrolled Hawaii divorce decree and the Parenting Plan. Thus, UIFSA is inapplicable.

## Subject Matter Jurisdiction

Mother first argues that the trial court lacked subject matter jurisdiction to modify the duration provision in the Hawaii divorce decree based on several provisions of UIFSA. She claims that "the duration of child support is one aspect of the issuing states initial controlling order that is nonmodifiable." Her argument is based on UIFSA provisions indicating that the law of the issuing state governs "[t]he nature, extent, amount, and duration of [child support]," Section 36-5-2604(a), and that "[a] tribunal of this state may not modify any aspect of a child support order that may not be modified under the law of the issuing state." Section 36-5-2611(c).

As noted above, by the time Father filed his motion to modify, the operative parenting order for these parties was the July 2009 order of the Tennessee trial court, which made the enrolled Hawaii divorce decree and the Parenting Plan part of the Tennessee "Order of the Court." Consequently, the UIFSA provisions Mother cites in support of her argument do not apply. Certainly, "Tennessee courts have subject matter jurisdiction to establish, enforce, or modify *Tennessee* support decrees." ***Letellier***, 40 S.W.3d at 494-95 (emphasis in original). Father's motion sought to modify a Tennessee order, so Mother's argument that the trial court lacked subject matter jurisdiction to modify the Hawaii divorce decree is without merit.

## Modification of the Duration of Father's Child Support Obligation

Mother next argues that the trial court erred in concluding that, under Hawaii law, the duration of Father's child support obligation is modifiable and that, therefore, the duration provision in the Hawaii divorce decree is modifiable by a Tennessee court. ***See*** Haw. Rev. Stat. § 580-47(a). Mother claims that, because the Hawaii divorce decree was not modifiable under Hawaii law, and Hawaii law governs the "duration" of child support under the relevant UIFSA provisions, the trial court erred in applying Tennessee law and in terminating Father's child support obligation.

In response, Father argues that the trial court correctly applied the substantive law of Tennessee according to the plain language of UIFSA, Section 36-5-2613. Under that provision, if all the parties reside in Tennessee, "the procedural and substantive law of

[Tennessee shall apply] to the proceeding[s] for enforcement and modification" of the Hawaii divorce decree. Tenn. Code Ann. § 36-5-2613(b). "This section [of UIFSA] is designed to make it clear that when the issuing state no longer has continuing, exclusive jurisdiction and the obligor and obligee reside in the same state, a tribunal of that state has jurisdiction to modify the child support order and assume continuing, exclusive jurisdiction." *Butler v. Butler*, No. M2001-01341-COA-R3-CV, 2012 WL 4762105, at *8 (Tenn. Ct. App. Oct. 5, 2012).

As we have explained, Father's motion sought to modify a Tennessee child support order, and UIFSA does not apply to his motion. Therefore, we find ourselves in agreement with Father's argument, adopted by the trial court, that the procedural and substantive laws of Tennessee apply to Father's motion. We turn now to the trial court's application of Tennessee law to Father's motion to terminate his child support obligation.

After concluding that the parties' Hawaii divorce decree was modifiable under Hawaii law, the trial court applied Tennessee law to Father's motion for termination of his child support obligation. In doing so, it granted Father's motion because "parents in Tennessee generally have no legal duty to support a child past the child's majority." *See Corder*, 231 S.W.3d at 355-56. Therefore, based on the substantive law in Tennessee, the trial court concluded that it had no authority to enforce the provision in the Hawaii divorce decree that required Father to pay support for his adult children.

We agree with the trial court's observation that, in Tennessee, a parent ordinarily has no legal obligation to support a child who has reached the age of majority and has graduated from high school. *See* Tenn. Code Ann. § 34-1-102(b). A parent may, however, assume such a duty by agreement, and an agreement to support a child beyond the age of majority will be enforced by the Tennessee courts. *See Corder*, 231 S.W.3d at 356; *see also Penland v. Penland*, 521 S.W.2d 222, 224-25 (Tenn. 1975); *Pylant v. Spivey*, 174 S.W.3d 143, 151 (Tenn. Ct. App. 2003); *Hathaway v. Hathaway*, 98 S.W.3d 675, 678 (Tenn. Ct. App. 2002); *Bryan v. Leach*, 85 S.W.3d 136, 151 (Tenn. Ct. App. 2001); *Hawkins v. Hawkins*, 797 S.W.2d 897, 898 (Tenn. Ct. App. 1990).

The July 2009 order upon which the parties agreed had two prongs. First, the agreed Parenting Plan, which modified the amount of Father's child support obligation but did not address the duration of his obligation. Second, the enrollment of the Hawaii divorce decree, which requires Father to provide support for his adult children until they finish post-high school education or turn 23 years old. Thus, the parties' agreement to enroll the Hawaii decree, without addressing duration of child support in the Parenting Plan, left intact the duration provision in the Hawaii divorce decree, and made it part of the overall agreed order. Taken as a whole, the July 2009 agreed order plainly obliges Father to pay support for the

parties' children past majority. *See Adkisson v. Adkisson*, No. E2012-00174-COA-R3-CV, 2013 WL 936369, at *1 (Tenn. Ct. App. Mar. 11, 2013) (reading several orders together to determine the total parental obligations).

Father argues vigorously that, notwithstanding the duration provision in the Hawaii divorce decree, he *did not* agree to support his children beyond the age of majority. He notes that the Parenting Plan is silent on the duration of child support, except that both the Parenting Plan and the later Wage Assignment Order state that child support was determined "in accordance with the Tennessee Child Support Guidelines." Supporting children past the age of majority is a deviation from the guidelines, he points out, and neither the Parenting Plan nor the Wage Assignment Order indicate a deviation or any reason for a deviation. Father argued to the trial court that the Parenting Plan supercedes the Hawaii divorce decree, and so: "The silence of [the] permanent parenting plan results in that provision [in the Hawaii divorce decree] going away and the law of the state of Tennessee applying and child support ending at age eighteen or when they graduate [from high school]."

We must respectfully reject this argument. The duration provision in the Hawaii divorce decree does not simply "go[] away." It is part of the Hawaii divorce decree, which was enrolled in Tennessee by agreement of the parties. It is undisputed that the amount of child support set forth in the Hawaii decree was modified by agreement of the parties in the Parenting Plan, incorporated into the July 2009 order. But nothing in the Parenting Plan modified the duration of child support set forth in the Hawaii decree, enrolled as part of the same order. Thus, the enrolled Hawaii decree and the Parenting Plan dovetail together, to establish both the amount and duration of Father's child support obligation, agreed upon by the parties in July 2009.[9] *See Konvalinka,* 249 S.W.3d at 359 (stating that orders should be interpreted like other written instruments); *see also Oman Const. Co. v. Tenn. Central Ry. Co.*, 370 S.W.2d 563, 573 (Tenn. 1963) ("[W]here several instruments are made as part of one transaction, they will be read together, and each will be construed with reference to the other."); *Graber v. Graber*, No. W2003-01180-COA-R3-CV, 2003 WL 23099689, at *3 (Tenn. Ct. App. Dec. 31, 2003) (noting that, where terms in separate contracts form integral parts of a single transaction, the contracts will be read together). Whatever Father's subjective intent may have been at the time the parties agreed to the issuance of the July 2009 order, nothing in the order, including the reference to the child support guidelines, indicates

_____

[9]We note that the record does not indicate whether the provision in the underlying Hawaii divorce decree, requiring Father to pay child support past the age of majority, was the product of an agreement between the parties. This does not affect our analysis, because in July 2009, the parties brought both the parenting plan and the underlying Hawaii decree to the Tennessee trial court and agreed that both would become part of an enforceable order of the Tennessee trial court.

an intent to truncate the duration of Father's child support obligation as set forth in the enrolled Hawaii decree.

Generally, an agreement that is merged into a court order becomes a disposition by the court; the "agreement or stipulation loses its contractual nature, and its provisions may be enforced by a court order." *Brewer v. Brewer*, 869 S.W.2d 928, 932 (Tenn. Ct. App. 1993). "[T]he reason for stripping the agreement of the parties of its contractual nature is the continuing statutory power of the Court to modify its terms when changed circumstances justify." *Penland*, 521 S.W.2d at 224. When an obligor parent agrees to support his or her child beyond the age of 18, however, the agreement "retains its contractual nature, even when it is incorporated into a child support order, because such support falls 'outside the scope of the legal duty of support during minority.'" *Butler*, 2012 WL 4762105, at *10 (quoting *Penland*, 521 S.W.2d at 224-25). Thus, agreements "for post-majority support are enforceable contracts, and the payment of college tuition is a valid contractual subject for a husband and wife in the throes of a divorce." *Hathaway*, 98 S.W.3d at 678 (citing *Penland*, 521 S.W.2d at 224). "Such contractual obligations are binding upon the parties, and will be construed by courts by principles of interpretation as any other contract." *Id.* (citing *Jones v. Jones*, 503 S.W.2d 924, 929 (Tenn. Ct. App. 1973)). In this case, the duration provision of the Hawaii decree became a binding contract when the parties agreed to enroll it, without modification of the duration provision, as part of the July 2009 agreed order.

In Tennessee, if an obligor parent agrees to support his or her children beyond the age of majority, the agreement may still be modified or even terminated if the obligor parent shows an unforeseen material change in circumstances that would justify relief from the obligation. *See, e.g.*, *Bucaro v. Bucaro*, No. M2009-00432-COA-R3-CV, 2010 WL 288775, at *5 (Tenn. Ct. App. Jan. 25, 2010) (seeking modification of the obligation based on less income). Father does not, however, assert an unforeseen change in circumstances, or for that matter, any other reason for terminating his child support obligation. He argues only that the duration provision in the Hawaii decree "went away" by operation of law when it was enrolled in Tennessee, an argument which we have declined to adopt. Because Father stated no basis for modifying or terminating his child support obligation as set forth in the operative parenting order, we must conclude that the trial court erred in granting his motion. This holding pretermits all other issues raised on appeal.

## CONCLUSION

The decision of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion. Costs on appeal are to be taxed to Appellee Geret Jesse Johnston, for which execution may issue, if necessary.


_____
HOLLY M. KIRBY, JUDGE

-14-